**No. 24-1499**

---

**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

JOANNE WALSH,
*Plaintiff-Appellant*

v.

HNTB CORPORATION
*Defendant-Appellee*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS, BOSTON
Case No. 1-22-CV-10453-NMG**

---

**RESPONSE BRIEF FOR APPELLEE**

---

Mark Tatum (1st Cir. 1212513)
SHOOK, HARDY & BACON
2555 Grand Blvd.
Kansas City, MO 64108
(816) 474-6550

Stephen I. Hansen (1st Cir. 1207644)
SHOOK, HARDY & BACON
One Federal Street, Suite 2620
Boston, MA 02110-2012
(617) 531-1411

*Counsel for Defendant-Appellee*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee HNTB Corporation hereby certifies that the following trial judges, attorneys, persons, association of persons, firms, partnerships, or corporations have an interest in the outcome of this appeal:

1.     Gorton, Nathaniel M., U.S. District Judge

2.     HNTB Corporation d/b/a HNTB Companies

3.     HNTB Holdings Ltd.

4.     1914 Holding Company

5.     SHOOK, HARDY & BACON, L.L.P.

6.     Tatum, Mark C.

7.     Hansen, Stephen I.

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Defendant-Appellee HNTB Corporation d/b/a HNTB Companies states that it is wholly owned by HNTB Holdings Ltd., a private company. HNTB Holdings Ltd. is wholly owned by 1914 Holding Company, a private company. There are no other entities that own a 10% or more interest in HNTB Corporation.

## <u>TABLE OF CONTENTS</u>

**Page**

JURISDICTIONAL STATEMENT ........................................................... 1

STATEMENT OF THE ISSUES PRESENTED ..................................... 2

STATEMENT OF THE CASE ................................................................ 2

    I.    FACTS RELEVANT TO THE ISSUES SUBMITTED FOR
REVIEW ................................................................................. 2

    II.    RELEVANT PROCEDURAL HISTORY ......................................... 7

SUMMARY OF THE ARGUMENT ...................................................... 9

    I.    THIS COURT LACKS JURISDICTION OVER THIS
APPEAL ................................................................................. 9

    II.    THE DISTRICT COURT CORRECTLY GRANTED
SUMMARY JUDGMENT FOR HNTB. ...................................... 11

ARGUMENT ........................................................................................ 12

    I.    THIS COURT LACKS JURISDICTION OVER THIS
APPEAL ................................................................................. 12

        A.    Walsh Failed to File a Timely Notice of Appeal as
Required by Section 2107. ................................................ 12

            1.    The Statutory Framework Governing Civil
Appeals is Jurisdictional. .......................................... 13

            2.    The May 18, 2024 Notice of Appeal Was Filed
Outside the Statutorily Authorized Timeframe. ........... 13

            3.    A Notice of Appeal Filed Outside the Statutory
Window Is a Nullity. ................................................. 15

        B.    Appellant's January 19, 2024 Filing Was Not the
Functional Equivalent of a Notice of Appeal. ..................... 16

C.   The District Court Lacked Statutory Authority to Extend the Appeal Deadline Beyond the Limits Prescribed by 28 U.S.C. Section 2107. ................................................................. 19

D.   Equitable Tolling Cannot Override Jurisdictional Time Limits Imposed by Statute. ....................................... 23

E.   HNTB Preserved Its Objection to the Timeliness of the Appeal. ...................................................................... 25

II.   THE DISTRICT COURT'S SUMMARY JUDGMENT ON WALSH'S CLAIMS SHOULD BE AFFIRMED ............................. 27

A.   Standard of Review ................................................. 27

B.   The District Court Properly Granted Summary Judgment in Favor of HNTB. ................................................. 27

1.   Walsh Has Not Met Her Prima Facie Burden .............. 27

a.   Walsh Has Not Identified an Adverse Employment Action Under Governing Law. ................................. 28

b.   Walsh Was Not Constructively Discharged. ............. 30

c.   Walsh Fails to Establish the Remaining Elements of Her Prima Facie Case. ................................................. 33

2.   HNTB Met Its Burden to Produce a Legitimate, Non-Discriminatory Reason Through Admissible Evidence. ....................................................................... 35

a.   Step Two Imposes a Burden of Production, Not Persuasion. ................................................................ 35

b.   HNTB's Proffered Reason Was Supported by Admissible Evidence. ................................................. 36

c.   The Alleged Contradictions Do Not Undermine Step Two. ............................................................................ 37

3.   Walsh Fails to Raise a Genuine Issue of Material Fact as to Pretext. ........................................................ 38

iii

a.    Pretext Requires More Than Disagreement or Speculation. ................................................. 38

b.    Alleged Inconsistencies Between the PIP and Past Reviews Do Not Support Pretext. ............................. 39

c.    Subjective Disagreements Over Office Cleanliness or Communication Style Are Not Evidence of Pretext. . 40

d.    The Alleged Disparate Treatment Argument Is Unsupported. ............................................... 40

e.    Stray Remarks and Alleged Stereotypes Do Not Establish Pretext. ......................................... 41

f.    Constructive Discharge Claim is Unsupported by Record Evidence. ....................................... 42

CONCLUSION ................................................... 42

CERTIFICATE OF COMPLIANCE WITH RULE 32 ........................................ 43

CERTIFICATE OF SERVICE ............................................. 44

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bhatti v. Trustees of Boston Univ.*,
  659 F.3d 64 (1st Cir. 2011)...................................................29

*Bowles v. Russell*,
  551 U.S. 205 (2007).......................................................*passim*

*Browder v. Dir., Dep't of Corr. of Illinois*,
  434 U.S. 257 (1978)..........................................................12

*Campiti v. Matesanz*,
  333 F.3d 317 (1st Cir. 2003)...................................17, 18, 19

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)...........................................................27

*Clark v. Cartledge*,
  829 F.3d 303 (4th Cir. 2016) .............................................16

*Counts v. Wilson*,
  699 F. App'x 779 (10th Cir. 2017) ...................................16

*Cruzado v. Alves*,
  89 F.4th 64 (1st Cir. 2023)................................................17

*Eagle Eye Fishing Corp. v. U.S. Dep't of Com.*,
  20 F.3d 503 (1st Cir. 1994)...............................................15

*Exum v. U.S. Olympic Comm.*,
  389 F.3d 1130 (10th Cir. 2004) ........................................31

*González v. El Día, Inc.*,
  304 F.3d 63 (1st Cir. 2002)..........................................33, 41

*Hamer v. Neighborhood Housing Services of Chicago*,
  583 U.S. 26 (2017)......................................................25, 26

*Isert v. Ford Motor Co.*,
  461 F.3d 756 (6th Cir. 2006) .......................................17, 18

v

*Kelley v. Corr. Med. Servs.*,
    707 F.3d 108 (1st Cir. 2013)................................................................40

*Knight v. Avon Prods.*,
    780 N.E.2d 1255 (2003) ..................................................................34

*Lee-Crespo v. Schering-Plough Del Caribe Inc.*,
    354 F.3d 34 (1st Cir. 2003)................................................................42

*Marrero v. Goya of P.R., Inc.*,
    304 F. 3d 7 (1st Cir. 2002)..................................................30, 31, 42

*Matthews v. Ocean Spray Cranberries, Inc.*,
    426 Mass. 122 (1997) ......................................................................40

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)....................................................11, 30, 35

*McKenna v. Wells Fargo Bank, N.A.*,
    693 F.3d 207 (1st Cir. 2012)................................................................12

*Mesnick v. General Electric Co.*,
    950 F.2d 816 (1st Cir. 1991)..........................................................30, 39

*Mirpuri v. ACT Mfg.*,
    212 F.3d 624 (1st Cir. 2000)..........................................................20, 21

*Muldrow v. City of St. Louis*,
    601 U.S. 346 (2024)..........................................27, 28, 29, 30

*O'Brien v. Wilmington Tr. Nat'l Ass'n*,
    517 F. Supp. 3d 54 (D. Mass. 2021)..........................................20, 21

*O'Rourke v. City of Providence*,
    235 F.3d 713 (1st Cir. 2001)................................................................32

*Pedraza v. Shell Oil Co.*,
    942 F.2d 48 (1st Cir. 1991)................................................................27

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000)........................................................................38

*Rios v. Centerra Group LLC*,
106 F.4th 101 (1st Cir. 2024)..................................................................29

*Robinson v. Town of Marshfield*,
950 F.3d 21 (1st Cir. 2020)....................................................................30

*Shorette v. Rite Aid of Maine, Inc.*,
155 F.3d 8 (1st Cir. 1998)......................................................................33

*Smith v. Barry*,
502 U.S. 244 (1992)..............................................................................17

*Speen v. Crown Clothing Corp.*,
102 F.3d 625 (1st Cir. 1996)..................................................................41

*St. Mary's Honor Ctr. v. Hicks*,
509 U.S. 502 (1993)..............................................................................36

*Suárez v. Pueblo Int'l, Inc.*,
229 F. 3d 49 (1st Cir. 2000)..............................................................31, 32

*Tex. Dep't of Cmty. Affs. v. Burdine*,
450 U.S. 248 (1981)..........................................................................35, 36

*Thomas v. Gandhi*,
650 F. Supp. 2d 35 (D.D.C. 2009), *aff'd,* 377 F. App'x 25 (D.C.
Cir. 2010) ............................................................................................34

*Tombeno v. FedEx Corp. Servs.*,
284 F. Supp. 3d 80 (D. Mass. 2018)........................................................30

*United States v. Silva*,
791 F. Supp. 2d 272 (D. Mass. 2011)......................................................20

*Vaqueria Tres Monjitas, Inc. v. Comas-Pagan*,
772 F.3d 956 (1st Cir. 2014)..................................................................12

*Virella-Nieves v. Briggs & Stratton Corp.*,
53 F.3d 451 (1st Cir. 1995)....................................................................20

*Xiaoyan Tang v. Citizens Bank, N.A.*,
821 F.3d 206 (1st Cir. 2016)..................................................................15

## Statutes

28 U.S.C. § 1331 ...................................................................................1

28 U.S.C. § 1367(a) .............................................................................1

28 U.S.C. § 2107 ..........................................................................*passim*

28 U.S.C. § 2107(a) .....................................................................*passim*

28 U.S.C. § 2107(c) .....................................................................*passim*

29 U.S.C. § 621 *et seq.*................................................................*passim*

42 U.S.C. § 2000e *et seq.*................................................................29

M.G.L. c. 151B .......................................................................18, 38

M.G.L. c. 151B § 4(1B) .................................................................2

## Other Authorities

Fed. R. App. P. 3 .....................................................9, 16, 18, 19

Fed. R. App. P. 3(c) ....................................................................17

Fed. R. App. P. 3(c)(1)(A) .........................................................16

Fed. R. App. P. 3(c)(1)(B) .........................................................16

Fed. R. App. P. 3(c)(1)(C) .........................................................16

Fed. R. App. P. 4 .....................................................12, 13, 20, 21

Fed. R. App. P. 4(a) ......................................................................1

Fed. R. App. P. 4(a)(1)(A) ...........................................................9

Fed. R. App. P. 4(a)(5) ...............................................................20

Fed. R. App. P. 4(a)(5)(C) ....................................................25, 26

Fed. R. App. P. 26(b)(1) .............................................................20

Fed. R. App. P. 32 ......................................................................43

Fed. R. App. P. 32(a)(5).........................................................................43

Fed. R. App. P. 32(a)(6).........................................................................43

Fed. R. App. P. 32(a)(7)(B) ....................................................................43

Fed. R. App. P. 32(f) ..............................................................................43

Fed. R. App. P. 32(g) .............................................................................43

Fed. R. Civ. P. 56 ...................................................................................27

Fed. R. Evid. 803(3)...............................................................................36

Fed. R. Evid. 803(6)...............................................................................37

.

## <u>JURISDICTIONAL STATEMENT</u>

The United States District Court for the District of Massachusetts had subject matter jurisdiction over this action pursuant to 28 U.S.C. Section 1331, as Plaintiff-Appellant Joanne Walsh ("Walsh") alleged a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Section 621 *et seq.*, a federal statute. The district court also exercised supplemental jurisdiction over Walsh's state law claims under 28 U.S.C. Section 1367(a).

This appeal purports to be taken from the final judgment entered by the district court on December 21, 2023 ("Order"), which disposed of all claims asserted by Walsh against Defendant-Appellee HNTB Corporation ("HNTB").

The Court of Appeals lacks jurisdiction over this appeal because Walsh failed to file a timely notice of appeal within the time limits prescribed by 28 U.S.C. Section 2107(a) and Federal Rule of Appellate Procedure 4(a). Walsh's initial 30-day appeal period expired on January 22, 2024. Although Walsh filed a timely motion for extension on January 19, 2024, the district court's order granting that extension (to March 29, 2024) did not issue until March 13, 2024, and Walsh failed to file a notice of appeal by that court-imposed deadline.

Instead, Walsh filed a Notice of Appeal on May 18, 2024, nearly four months after entry of the Order and well beyond the period authorized by statute. Because 28 U.S.C. Section 2107(c) strictly limits the district court's authority to extend the

appeal deadline, and because the May 18, 2024 Notice of Appeal was filed outside any permissible timeframe, this Court lacks jurisdiction over the appeal.

## STATEMENT OF THE ISSUES PRESENTED

1.     Whether this Court lacks jurisdiction over this appeal,

2.     Whether this Court should affirm the District Court's summary judgment on Walsh's state law claim under M.G.L. Chapter 151B, Section 4(1B),

3.     Whether this Court should affirm the District Court's summary judgment on Walsh's claim under the ADEA, 29 U.S.C. Section 621, *et seq.*

## STATEMENT OF THE CASE

## I.     FACTS RELEVANT TO THE ISSUES SUBMITTED FOR REVIEW[1]

Walsh was employed by HNTB from January 31, 1994 to September 11, 2020. WAPP 99, 153. At the time her employment ended, Walsh was employed as a Technology Support Representative II ("TSR 2). WAPP 124. At the time Walsh's employment ended, she was 55 years old. WAPP 98.

Walsh's job duties included supporting IT for HNTB users, including ordering IT equipment and software licenses, installing applications and software, setting up equipment for new hires, replacing equipment when the lease was due, upgrading software, and handling hardwire failures. WAPP 100-01, 103. Walsh served as the

---

[1] Citations to "OB" refer to Walsh's Opening Brief; "WAPP" refers to Walsh's Appendix; and "HADD" refers to HNTB's Addendum.

primary IT contact for users in HNTB's Boston, Portland, Hartford, and Bridgeport offices. WAPP 104.

Danny Vealey ("Vealey") was initially Walsh's team leader and then became her manager in November 2019. WAPP 114-15. Vealey was a TSR 4 and team leader for the Technology Support Representatives for the Northeast Division of HNTB. WAPP 106. Vealey was 63 years old at the time of Walsh's resignation. WAPP 106, 169.

Vealey's team included Walsh, Lindsay Allinson ("Allinson"), Gregory DeMarinis, and Renaldo Cordero. WAPP 112. Allinson was a full time TSR 2 for the Chelmsford, Concord, Boston, and Pittsburg offices and he was 59 years old at the time of Walsh's resignation. WAPP 102, 153, 167.

Allinson was placed on a Performance Improvement Plan ("PIP") when his performance was inadequate. WAPP 150. Allinson resigned from HNTB on the same day as Walsh. WAPP 151.

The typical progression from a TSR 2 is a promotion to TSR 3. WAPP 164. During her employment, Walsh was informed of the TSR 3 position and the requirements to be eligible for it. WAPP 107. Walsh's previous supervisor, Kevan Welsh, had conversations with Walsh regarding the TSR 3 position and whether she desired to pursue the position, what it would entail, and how to they could work together through coaching and growth opportunities. WAPP 164. There was no

requirement to become a TSR 3. *Id*. Walsh did not want to be promoted to the TSR 3 position. (Walsh Dep. 96:24-25). Walsh was happy with her Technology Support Representative II duties. WAPP 108.

Walsh was at the top of her salary range as a TSR 2. WAPP 126. Once a TSR 2 reaches the maximum salary range, the only way to increase their base salary is to be promoted to a TSR 3 position. WAPP 168.

Walsh's 2018 annual performance review was overall "Met Expectations" but indicated that there were concerns about performance issues. WAPP 133-39. The ranking received was qualified as "at the lowest in the range." *Id*. Within the evaluation, it was noted she lacked initiative, failed to work to develop others, and failed to show an openness to stretching herself to support others. *Id*.; WAPP 175.

Walsh's 2019 annual performance review was "Inconsistently Met Expectations." WAPP 141-44. In 2019, Walsh's performance was falling behind other employees. Walsh's performance concerns included failure to manage workflow, engage with teams, and follow through. WAPP 127. Walsh was placed on a PIP on August 1, 2019. WAPP 118-19.

James Clark ("Clark") was the Technology Manager and served as Walsh's supervisor from 2018 to the end of 2019. WAPP 105, 147. Clark was 60 years old at the time of Walsh's resignation. WAPP 146. The decision to place Walsh on a PIP was based on feedback from leadership in the Boston and Chelmsford office

regarding an overall lack of confidence in Walsh's work ethic and lack of responsiveness. WAPP 149.

HNTB leaders Phil Brake ("Brake") and Gary Bua ("Bua") raised concerns about Walsh's performance to HNTB's Chief Information Officer, Steve Haag ("Haag"), who then provided them to Mark Dunton ("Dunton"), then David Gregory ("Gregory"), Clark's supervisor. WAPP 149, 155-57, 179. Brake is employed as Design Build President for HNTB; his date of birth is February 10, 1969. WAPP 168. Bua is employed as Office Leader IV for HNTB; his date of birth is February 7, 1969. *Id.* Haag was employed as Chief Information Officer for HNTB; his date of birth is July 11, 1970. *Id.* Dunton is employment as Director – Technology Delivery for HNTB; his date of birth is December 29, 1962. WAPP 169. Gregory is employed as Manager – Technology for HNTB; his date of birth is December 3, 1978. *Id.*

Clark, along with Gregory and Dutton, conducted a conference call with Bua to discuss the feedback on Walsh's performance. WAPP 149, 151. Gregory provided the feedback received from HNTB leadership to Clark to construct a PIP for Walsh. WAPP 149. Walsh was placed on the PIP to address performance issues including concerns regarding responsiveness, pushback, upkeep of the technical room, and lease returns. WAPP 149-51.

Walsh's PIP indicates her work performance was unsatisfactory due to: (1) she was an impediment to the success of the office as she was seen as contentious,

"hiding" in the IT room, reluctant to proactively engage; (2) the IT office was cluttered, messy, making it difficult for employees to access IT resources; and (3) she failed to act on or improve on performance issues identified in her 2019 performance review including stretching beyond the status quo, improvement in availability, willingness to take on additional duties, and taking initiative. WAPP 118-19. Walsh's supervisor Vealey agreed the PIP was necessary and valid. WAPP 127.

Vealey worked with Walsh throughout the PIP process; over time, he believed Walsh satisfactorily completed the goals outlined within the PIP. WAPP 128-30. Walsh's PIP ended after 90 days, on November 1, 2019. WAPP 109, 118-19, 130.

Walsh's 2020 goals for the Technology Support Representative position were similar to those of other similarly situated Technology Support Representatives. WAPP 110.

Walsh never raised any complaints concerning age discrimination to HNTB while employed. WAPP 111. Walsh never complained to Human Resources or submitted any hotline calls regarding Vealey or Clark or anyone else. WAPP 111-12.

Walsh resigned from HNTB on September 11, 2020. WAPP 99, 121. Walsh's decision to leave at that time was her own, she "planned to quietly walk out." WAPP 159, 161. Walsh was never told or asked by anyone to leave HNTB. WAPP 116.

6

At the time she resigned, Walsh was paid an hourly base of $46.88. WAPP 153. At the time of her resignation, Walsh was the highest paid TSR 2 under the supervision of Vealey. WAPP 168.

Walsh was never demoted, never suffered a pay cut, and never had her responsibilities cut. WAPP 107.

Walsh's resignation left Vealey and the IT team in turmoil. WAPP 130-31. Walsh's resignation created "a whole another problem" for Vealey as HNTB was left with only one TSR 2 for the Northeast Division. WAPP 129. Walsh was not on a path of termination when she resigned and would have continued in the position of TSR 2 but for her resignation. WAPP 130.

HNTB had an immediate need to find replacement personnel for the Boston office to continue supporting IT operations. WAPP 131. Walsh's responsibilities after her resignation were ultimately assumed by Amr Kaliouby ("Kaliouby"). WAPP 153, 179. Kaliouby was hired on December 14, 2020 as a TSR 3 supporting HNTB's Boston and Chelmsford offices. WAPP 153, 179. At the time he was hired as a TSR 3, Kaliouby was 53 years old and paid an hourly rate of $39.04. WAPP 153, 167.

## II.    RELEVANT PROCEDURAL HISTORY

HNTB agrees with Walsh's statement of the relevant procedural history.

In addition, the timing and order of Walsh's and HNTB's filings regarding the timeliness of Walsh's appeal are as follows:

- December 21, 2023 – The District Court entered final judgment in this matter;

- January 19, 2024 – Walsh filed a Request for Extension to File Notice of Appeal ("First Motion");

- March 13, 2024 – The District Court granted Walsh her first extension to file her notice of appeal by March 29, 2024 ("First Extension");

- March 18, 2024 – Walsh filed a Second Request for Extension to File Notice of Appeal ("Second Motion");

- April 1, 2024 – HNTB filed its Opposition to Walsh's Second Motion;

- April 26, 2024 – The District Court granted Walsh a second extension to file her appeal by May 10, 2024 ("Second Extension") and stating that there would be no further extensions;

- May 13, 2024 – Walsh filed a Third Request for Extension to File Notice of Appeal ("Third Motion");

- May 15, 2024 – Walsh filed a Motion for Leave to File Notice of Appeal, with a proposed Notice of Appeal attached to that Motion ("Motion for Leave");

- May 16, 2024 – The District Court granted Walsh's May 15, 2024 Motion for Leave;

- May 17, 2024 – The District Court entered an Order allowing Walsh's May 13, 2024 ("Third Motion");

- May 18, 2024 – Walsh filed her Notice of Appeal.

WAPP 10-11.

## SUMMARY OF THE ARGUMENT

## I.    THIS COURT LACKS JURISDICTION OVER THIS APPEAL

Walsh's appeal must be dismissed for lack of appellate jurisdiction. Under Section 2107(a) and Rule 4(a)(1)(A), a notice of appeal in a civil case must be filed "within 30 days of the entry of the judgment or order appealed from." 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A). Here, the Order was entered on December 21, 2023, yet Walsh did not file a notice of appeal until May 18, 2024—well beyond the jurisdictional deadline. While the district court granted two extensions, its second extension—issued on May 16, 2024—exceeded the 30-day period authorized by Section 2107(c) and is therefore void. This Court lacks jurisdiction to entertain appeals not timely filed within the statutory window.

Walsh's January 19, 2024 *pro se* Motion for an Extension of Time did not satisfy the requirements of a valid notice of appeal under Rule 3. *See* Fed. R. App. P. 3. That motion did not identify the order or judgment being appealed, nor the court to which the appeal was being taken, both of which are required. The First Circuit has recognized that substantial compliance with Rule 3 is required, even for *pro se*

litigants. Because the January 19, 2024 filing failed to meet those basic criteria, it cannot be deemed the "functional equivalent" of a notice of appeal.

Nor did the district court have authority to grant an extension beyond the strict statutory deadline established by Section 2107(c). The statute permits an extension only if the motion is filed within 30 days after the original deadline and only allows the district court to grant an extension within that time. The district court's May 16, 2024 order allowing May 15, 2024 dated Motion for Leave, issued nearly 60 days after the initial appeal deadline had lapsed, was therefore jurisdictionally invalid.

Walsh's reliance on equitable tolling is likewise unavailing. The Supreme Court has made clear that the deadlines in Section 2107 are jurisdictional, not subject to equitable modification. Statutory deadlines such as those in Section 2107(a) and (c) cannot be waived or forfeited. Accordingly, equitable principles cannot override Congress's express limits on the time to appeal.

Finally, HNTB properly preserved its objection to the timeliness of the appeal. HNTB did not oppose Walsh's initial extension request dated January 19, 2024 because it was timely. However, HNTB timely objected to subsequent untimely requests and raised the jurisdictional defect in both the district court and this Court. The objection has, therefore, not been waived or forfeited.

Because Walsh failed to timely file a notice of appeal and the district court lacked authority to extend the deadline, this Court is without jurisdiction, and the appeal must be dismissed.

## II. THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT FOR HNTB.

The district court correctly granted summary judgment in favor of HNTB on Walsh's age discrimination claims under both the ADEA and Massachusetts Chapter 151B. Even when viewing the record in the light most favorable to Walsh, she failed to meet her burden at each stage of the *McDonnell Douglas* framework.

First, Walsh did not demonstrate that she suffered an adverse employment action or was constructively discharged. Routine workplace management—including performance feedback, a PIP, and interpersonal conflicts—does not rise to the level of an adverse action under applicable law. Her job title, pay, and benefits remained unchanged, and she continued working for nearly a year after the PIP. Walsh's constructive discharge claim fails because her work conditions were not objectively intolerable.

Second, HNTB satisfied its burden of production at step two by offering admissible evidence that Walsh was placed on a PIP due to supervisor concerns about her responsiveness and support—not because of her age.

Third, Walsh offered no evidence from which a reasonable jury could infer that HNTB's stated reasons were pretext for age discrimination. Her arguments

relied on speculation, disagreement with performance feedback, and isolated remarks, none of which are sufficient to establish pretext. She identified no similarly situated younger employees treated more favorably, and vague comments about pace or flexibility do not support an inference of discriminatory animus.

Because Walsh failed to establish a *prima facie* case, HNTB provided a legitimate, non-discriminatory reason for its actions, and no reasonable jury could find that reason to be pretext for age discrimination, the district court's grant of summary judgment should be affirmed.

## ARGUMENT

## I.    THIS COURT LACKS JURISDICTION OVER THIS APPEAL

### A.    Walsh Failed to File a Timely Notice of Appeal as Required by Section 2107.

This Court lacks jurisdiction over this appeal because Walsh failed to file a notice of appeal within the time limits prescribed by Section 2107 and Rule 4. The statutory deadline for filing a notice of appeal is not merely procedural—it is "mandatory and jurisdictional." *Browder v. Dir., Dep't of Corr. of Illinois,* 434 U.S. 257, 264 (1978). "[I]t is settled that a civil appeal filed out of time is barred [and] that the error in timing cannot be waived" by the Court. *McKenna v. Wells Fargo Bank, N.A.,* 693 F.3d 207, 213 (1st Cir. 2012); *see also Vaqueria Tres Monjitas, Inc. v. Comas-Pagan,* 772 F.3d 956, 958-60 (1st Cir. 2014).

Consequently, failure to comply with Section 2107 and Rule 4's timing requirements is fatal to appellate jurisdiction and mandates dismissal. *See Bowles v. Russell*, 551 U.S. 205, 213 (2007).

### 1.    The Statutory Framework Governing Civil Appeals is Jurisdictional.

Under Section 2107, a notice of appeal in a civil case must be filed "within thirty days after the entry of such judgment, order or decree." 28 U.S.C. § 2107(a). The district court entered judgment in favor of HNTB on December 21, 2023. Walsh thus had until January 22, 2024 to file a notice of appeal. She did not do so.

Instead, Walsh filed a motion on January 19, 2024, requesting an extension of time to file her notice of appeal. While the district court ultimately granted that motion on March 13, 2024, this was well outside the 30-day window set forth in Rule 4 and Section 2107. Nevertheless, Walsh did not comply with that Order. She did not file her actual notice of appeal until May 18, 2024—nearly four months after the District Court's first extension, and over a week after the District Court's second extension.

### 2.    The May 18, 2024 Notice of Appeal Was Filed Outside the Statutorily Authorized Timeframe.

Even after the district court granted the initial extension to March 29, 2024, Walsh failed to file a notice of appeal by that date. Instead, she filed a second request for additional time on March 18, which the court partially granted on April 26,

extending the deadline to May 10. However, Walsh states she did not learn of that order until May 13, 2024, at which point she sought relief for a third time. Notably, Walsh's statement that she did not know of the second extension has nothing to do with her missing the first extension. Even so, she then did not file her Notice of Appeal until May 18, 2024.

Whatever equitable considerations may weigh in Walsh's favor, they cannot cure a jurisdictional defect. As the Supreme Court has explained, "[b]ecause Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them." *Bowles*, 551 U.S. at 212-13. Where Congress has clearly set a jurisdictional deadline, neither the district court nor this Court may extend it. *Id*. at 214 ("[T]his Court has no authority to create equitable exceptions to jurisdictional requirements.").

Here, Section 2107(c) permitted the district court to grant an extension only if the request was made within 30 days after the expiration of the original appeal period. 28 U.S.C.A. § 2107(c). Walsh's January 19, 2024 motion satisfied that condition. But even under that extension, her latest permissible deadline would have been March 29, 2024—the deadline imposed by the district court's First Extension dated March 13, 2024. All subsequent attempts to extend that period, including the Second Extension dated April 26, 2024 and the May 16, 2024 dated order allowing

Walsh's Third Extension request of May 15, 2024 were without jurisdictional authority under Section 2107. *See Bowles*, 551 U.S. at 213–14.

### 3. A Notice of Appeal Filed Outside the Statutory Window Is a Nullity.

Because Walsh's May 18, 2024 Notice of Appeal falls outside the statutorily prescribed and jurisdictionally permitted window, it is of no effect. Walsh may argue that the district court's delay in ruling on her motions or in mailing the April 26, 2024 order excuses her delay. But any such argument is unavailing.

First, as stated above, nothing about not receiving the order granting her second request has anything to do with missing her first extension request. Regardless, there are no exceptions for *pro se* plaintiffs, such as Walsh here. Although "[a] pro se litigant, like any litigant, is guaranteed a meaningful opportunity to be heard," *Eagle Eye Fishing Corp. v. U.S. Dep't of Com.,* 20 F.3d 503, 506 (1st Cir. 1994), this Court has consistently held that the "right of self-representation is not a license not to comply with relevant rules of procedural and substantive law." *See, e.g., Xiaoyan Tang v. Citizens Bank, N.A.,* 821 F.3d 206, 220 n.13 (1st Cir. 2016) (citations omitted).

The bottom line is Walsh's Notice of Appeal was filed nearly four months after final judgment and well beyond any jurisdictionally authorized extension, this Court lacks appellate jurisdiction. The appeal must be dismissed.

**B.** **Appellant's January 19, 2024 Filing Was Not the Functional Equivalent of a Notice of Appeal.**

Walsh contends that her *pro se* Motion for an Extension of Time, filed on January 19, 2024, should be construed as the "functional equivalent" of a notice of appeal under Federal Rule of Appellate Procedure 3, thereby rendering her appeal timely. OB pp. 20-24. That is just an after-the-fact argument to preserve jurisdiction. The reality is she sought three extensions to file her Notice of Appeal. And then filed one. Although courts have, in rare and narrow circumstances, recognized non-conforming filings as sufficient to meet the requirements of Rule 3, Walsh's January 19, 2024 submission does not satisfy that standard.

An aspiring notice of appeal thus "must specify" not just any "party" but "the party ... taking the appeal," Fed. R. App. P. 3(c)(1)(A); it must designate not just any court but "the court to which the appeal is taken," Fed. R. App. P. 3(c)(1)(C); and it must designate not just any order but "the ... order [or orders] ... being appealed," Fed. R. App. P. 3(c)(1)(B). A motion for an extension of time to file a notice of appeal can only qualify as the functional equivalent of a notice of appeal if it specifies the party taking the appeal, the judgment being appealed from, the court to which the appeal is to be taken, and must clearly indicate an intent to seek appellate review. *Counts v. Wilson,* 699 F. App'x 779, 782 (10th Cir. 2017). If a motion for an extension of time does not designate which judgment is being appealed or does not convey an intent to appeal, it will not be treated as a notice of appeal. *Clark v.*

*Cartledge,* 829 F.3d 303, 305 (4th Cir. 2016); *Isert v. Ford Motor Co.,* 461 F.3d 756, 759 (6th Cir. 2006). Subjective uncertainty about the party's desire to appeal, or ability to appeal, or the mere act of seeking more time without the requisite notice elements prevents a motion for an extension from satisfying the requirements of a notice of appeal. *Isert,* 461 F.3d at 761.

As the Supreme Court made clear in *Smith*, a document may serve as the "functional equivalent" of a notice of appeal only if it (1) evinces a clear intent to appeal, and (2) contains the pertinent information required by Rule 3(c), including: (i) identification of the parties, (ii) designation of the judgment or order being appealed, and (iii) the court to which the appeal is taken. *Smith v. Barry*, 502 U.S. 244, 248–49 (1992). The First Circuit has reaffirmed that these criteria must be met to invoke appellate jurisdiction. *See Cruzado v. Alves*, 89 F.4th 64, 72 (1st Cir. 2023); *Campiti v. Matesanz*, 333 F.3d 317, 320 (1st Cir. 2003). Walsh's January 19, 2024 filing fails on multiple fronts.

First, the document does not clearly designate the judgment or order being appealed. WAPP 13. Walsh could have appealed more than one judgment – or part thereof – because the district court issued at least three substantive appealable

17

judgments on separate state and federal law claims.[2] The filing likewise does not identify the court to which the appeal is taken.

Second, Walsh's motion does not state that she intends to appeal; it merely requests additional time so that the new law firm she was "searching for … to represent [her] ... [could] read several documents on the case before deciding if they can handle it." WAPP 13. Such a statement is not equivalent to a declaration that she intends to appeal. After all, any new firm she retained could review the case and decline to take it, leaving her to either search for another attorney or abandon the idea of appealing altogether. Such ambiguity undermines the jurisdictional function that Rule 3 is designed to serve. Similar to the Plaintiff-Appellant in *Isert,* Walsh filed a motion for "request extension to file Notice of Appeal" which fails to state that she intended to appeal. *Isert v. Ford Motor Co.,* 461 F.3d 756, 759 (6th Cir. 2006). A motion that fails to specify the judgment at issue, the appellate court, and whether the movant actually intends to appeal versus is investigating that possibility cannot reasonably be construed, under Rule 3, as invoking the jurisdiction of this Court.

In fact, the rare circumstances in which courts have recognized functional equivalence—*Campiti* (a motion for appointment of appellate counsel construed as

---

[2] Judge Nathaniel M. Gorton's December 21, 2023 ordered summary judgment as to Count I: Discrimination on the Basis of Age in Violation of M.G.L. c. 151B, Count II: Discrimination on the Basis of Age in Violation of 29 § 621-634 (ADEA), and Count III: Breach of Covenant of Good Faith and Fair Dealing.

a notice of appeal)—involved a filing that, though procedurally nonconforming, still included the critical jurisdictional elements and left no doubt as to the litigant's intent to appeal. *Campiti*, 333 F.3d at 320. Walsh's motion does not approach that threshold.

To accept Walsh's theory would stretch the functional equivalence doctrine beyond recognition and permit any post-judgment filing suggesting a vague or potential interest in appealing to serve as a notice of appeal. Rule 3 serves an important jurisdictional gatekeeping function, and its minimal formal requirements are neither onerous nor dispensable.

In sum, Appellant's First Motion dated January 19, 2024 does not constitute the "functional equivalent" of a notice of appeal. It fails to meet the substantive requirements of Rule 3 and reflects—at most—tentative consideration of an appeal. Accordingly, the filing did not confer appellate jurisdiction, and the untimely notice of appeal that followed cannot be salvaged by reference to that earlier submission.

## C.   The District Court Lacked Statutory Authority to Extend the Appeal Deadline Beyond the Limits Prescribed by 28 U.S.C. Section 2107.

The appeal in this case must be dismissed for lack of jurisdiction because the district court extended the deadline for filing a notice of appeal beyond the strict temporal limits imposed by Section 2107. That statute defines the outer bounds of the district court's authority to grant extensions of time to appeal. Once those limits

were exceeded, any further extension was ultra vires, and any notice of appeal filed pursuant to such an order was a nullity.

Under Section 2107(a), a notice of appeal in a civil case must be filed within 30 days of entry of the judgment. 28 U.S.C.A. § 2107(a). Section 2107(c) permits a district court to extend that deadline, but only in a narrow set of circumstances: "[T]he district court may, upon motion filed not later than 30 days after the expiration of the time otherwise set for bringing appeal, extend the time for appeal upon a showing of excusable neglect or good cause." 28 U.S.C. § 2107(c); *Virella-Nieves v. Briggs & Stratton Corp.,* 53 F.3d 451, 453 (1st Cir. 1995).

A district court's authority to enlarge the time to file a notice of appeal, under Rule 4(a)(5), requires a showing of excusable neglect or good cause. *United States v. Silva,* 791 F. Supp. 2d 272, 273 (D. Mass. 2011); Fed. R. App. P. 26(b)(1) (prohibiting courts from extending time to file notice of appeal except as authorized by Rule 4). Furthermore, the district court's discretion to grant such an extension is *conditioned on the movant demonstrating* either good cause or excusable neglect. *Mirpuri v. ACT Mfg.,* 212 F.3d 624, 630 (1st Cir. 2000) (emphasis added).

Walsh's efforts to locate appellate counsel do not amount to "good cause" under applicable law. In *O'Brien,* the court held that a plaintiff's attempt to retain counsel for appeal did not demonstrate that circumstances beyond her control prevented her from filing a timely notice of appeal. *O'Brien v. Wilmington Tr. Nat'l*

*Ass'n*, 517 F. Supp. 3d 54, 58–59 (D. Mass. 2021). As in *O'Brien*, the decision to retain appellate counsel here remained entirely within Walsh's control, and therefore does not support a finding of good cause for an extension.

Nor has Walsh shown the kind of exceptional circumstances required to establish excusable neglect. *See Mirpuri v. ACT Mfg., Inc.*, 212 F.3d 624, 631 (1st Cir. 2000). In assessing excusable neglect, courts consider factors such as the risk of prejudice to the opposing party, the length and effect of the delay on judicial proceedings, the reason for the delay (especially whether it was within the movant's control), and whether the party acted in good faith. *Id.* at 630–31. Here, Walsh sought multiple extensions—cumulatively extending more than four months beyond the original Rule 4 deadline—based solely on her ongoing search for appellate representation. That justification, repeated in each motion, does not rise to the level of excusable neglect or warrant repeated extensions of time to appeal.

Under Section 2107 and Rule 4, April 26, May 16, and May 17 orders purporting to extend the appeal period were plainly beyond the district court's statutory authority. The statutes allow a district court to act only within the 30 days following the original appeal deadline, and then only once, based on a showing of excusable neglect or good cause. There is no provision for successive extensions or for the court to revisit its earlier extension order after the statutory period expires.

Walsh attempts to shift the blame to the court for not serving her with the Second Extension dated April 26, 2024 (setting a May 10 deadline), but this argument is unavailing. OB pp. 2-3. The critical point is that, by April 26, the district court's authority to extend the appeal period had already expired. And the record is undisputed she had already missed her original deadline and first extension deadline. Once that period elapsed, the district court had no residual authority to grant any further extensions or to retroactively validate a late filing even if Walsh had been served with this Second Extension dated April 26.

Even assuming the District Court had authority to act on Walsh's March and May filings (which it did not), it granted relief well after the deadline fixed by Section 2107(c). The May 16, 2024 order allowing Walsh's Motion for Leave—nearly five months after the entry of judgment—is incompatible with the strict time limits imposed by statute. Unlike deadlines found in court rules, which may sometimes be treated as claim-processing provisions subject to equitable modification, deadlines codified by statute—particularly those governing appellate jurisdiction—are not malleable. *Bowles*, 551 U.S. at 210 (distinguishing between jurisdictional deadlines set by statute and claim-processing rules set by rule).

Walsh's suggestion that her continued efforts somehow preserves her right to do so ignores the statutory structure. The jurisdictional time limit is triggered by the timely filing of a notice of appeal within the period allowed by law or by a properly

granted extension: "[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement." *Id*. at 214.

Because the District Court lacked statutory authority to extend the appeal deadline beyond the limits imposed by Section 2107(c), its later orders purporting to do so were void. As such, Walsh's May 18, 2024 Notice of Appeal, filed well after the statutory deadline and outside the scope of any valid extension, cannot invoke this Court's appellate jurisdiction.

### D.   **Equitable Tolling Cannot Override Jurisdictional Time Limits Imposed by Statute.**

Walsh's argument that equitable tolling should salvage her untimely appeal is foreclosed by binding Supreme Court precedent. The statutory time limits for filing a notice of appeal in civil cases are jurisdictional. As such, they are not subject to equitable tolling, waiver, or forfeiture. Appellant's reliance on equitable principles cannot confer appellate jurisdiction where none exists.

In *Bowles*, the appellant filed a notice of appeal after the time permitted by Section 2107(c), relying on a district court order that erroneously granted him more time than the statute allowed. *Bowles*, 551 U.S. at 207. The Supreme Court held that, regardless of the district court's mistake, the notice of appeal was untimely, and the appellate court lacked jurisdiction. *Id*. at 214. The Court emphasized that "[b]ecause Congress specifically limited the amount of time by which district courts can extend the notice-of-appeal period in § 2107(c)," that limitation is jurisdictional." *Id.* at 205.

Here, as in *Bowles*, the district court granted extensions that exceeded the statutory limits. The judgment was entered on December 21, 2023. Walsh did not file a notice of appeal within the initial 30-day period. She filed her first Motion for an Extension on January 19, 2024, within the 30-day grace period allowed under Section 2107(c), and the district court granted her an extension to March 29, 2024. That order was within the bounds of the statute.

However, Walsh did not file a notice of appeal by March 29, 2024. Instead, she filed the Second Motion on March 18, 2024, and then the Third Motion on May 13, 2024, another Motion for Leave on May 15, 2024, and finally her Notice of Appeal on May 18, 2024—nearly five months after judgment. By that time, the court no longer had statutory authority to further extend the time for appeal or grant any related motion. These extensions fell outside the strict limits of Section 2107(c) and are, under *Bowles*, void for purposes of establishing appellate jurisdiction. Nothing about any inequity in the Court's service of her second extension order had anything to do with her missing her original and first extension deadline.

In sum, the relevant time limits in this case are governed by Section 2107(c), and they are jurisdictional. Walsh failed to file a notice of appeal within the time permitted by that statute, and the district court lacked authority to extend the deadline beyond the statutory cap. Because equitable tolling cannot override jurisdictional limitations, this Court lacks authority to hear the appeal.

**E.     HNTB Preserved Its Objection to the Timeliness of the Appeal.**

Contrary to Walsh's assertion, HNTB did not forfeit or waive its challenge to the untimeliness of this appeal. OB p. 10. The procedural record here demonstrates that HNTB timely and expressly objected to Walsh's effort to extend the appellate deadline beyond the parameters permitted by Section 2107 and the Federal Rules of Appellate Procedure.

The core of Walsh's forfeiture argument is that HNTB failed to oppose her *First* Motion for an extension of time, filed on January 19, 2024, and that such silence foreclosed any future challenge. OB p. 15. However, that argument disregards the broader procedural context. HNTB did not oppose the First Motion because it was within the statutory parameters. HNTB filed a written opposition on April 1, 2024 to Walsh's *Second* Motion for extension of time, squarely raising concerns about timeliness under Rule 4(a)(5)(C). HADD 2. At that point, Walsh was requesting a second extension of time, well beyond the 30-day cap allowed under Rule 4(a)(5)(C). HNTB's opposition directly contested the propriety of any further extension and made clear that Appellant's request exceeded the limits permitted by the Federal Rules. HADD 2-4.

This objection was sufficient to preserve the timeliness issue. As the Supreme Court has recognized, "mandatory claim-processing rules" such as Rule 4(a)(5)(C) are subject to waiver or forfeiture only if not timely raised. *Hamer*, 583 U.S. at *26.

In contrast to the employer in *Hamer*, which failed to raise any objection until the appeal was fully briefed and pending argument (*id*. at \*21), HNTB objected before Walsh even filed her Notice of Appeal. *See* HADD 1-4. HNTB's response was therefore timely and procedurally appropriate.

Further, HNTB continued to contest the appeal's timeliness at every subsequent stage of the proceedings. In its August 8, 2024 dated Response to Appellant's July 22, 2024 Response Filing and Motion to Dismiss Appeal filed in this Court, HNTB moved to dismiss the appeal for lack of jurisdiction on the ground that Walsh's Notice of Appeal was untimely under both 28 U.S.C. Section 2107(c) and Fed. R. App. P. 4(a)(5)(C). HADD 7-16. This preserved the issue for full appellate review.

Finally, even if HNTB had not objected to the First Motion, there is no authority for the proposition that failure to oppose one extension request, that is timely filed and generally based on acceptable grounds at that moment, operates as a global waiver of all future timeliness objections. The mandatory limitation in Rule 4(a)(5)(C) applies independently to each request for extension, and an appellee may properly object once the moving party exceeds the rule's express boundaries. Accordingly, HNTB preserved its objection to timeliness.

To conclude, because Walsh failed to timely file a notice of appeal and the district court lacked authority to extend the deadline, this Court is without jurisdiction, and the appeal must be dismissed.

## II.   THE DISTRICT COURT'S SUMMARY JUDGMENT ON WALSH'S CLAIMS SHOULD BE AFFIRMED

### A.   <u>Standard of Review</u>

This Court "review[s] the grant of summary judgment *de novo,* employing the standards utilized by the district court." *Pedraza v. Shell Oil Co.*, 942 F.2d 48, 50 (1st Cir. 1991). Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B.   <u>The District Court Properly Granted Summary Judgment in Favor of HNTB.</u>

#### 1.   Walsh Has Not Met Her Prima Facie Burden

Walsh fails to meet her burden of establishing a *prima facie* case of age discrimination under both the Massachusetts law and the ADEA. Neither cases cited in her brief (*Muldrow* and *Yee*) alters the outcome here, where the conduct cited by Walsh does not amount to an "adverse action," nor does the record support a finding

of constructive discharge. The district court correctly granted summary judgment in HNTB's favor.

a.    Walsh Has Not Identified an Adverse Employment Action Under Governing Law.

The conduct Walsh challenges here—routine supervisory oversight, the implementation of a PIP, interpersonal tensions, and dissatisfaction with certain task assignments—does not rise to the level of a cognizable adverse employment action. *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024).

Walsh relies heavily on *Muldrow* to argue that the district court applied an unduly narrow standard for what constitutes an adverse employment action. OB pp. 32-33. But *Muldrow* is inapposite. That case involved a discriminatory job transfer grounded in sex-based animus, resulting in tangible, documented harms. *Id*. at 351-52. The plaintiff in *Muldrow* was removed from a prestigious unit, lost her regular work schedule, had her vehicle privileges revoked, and was denied professional opportunities, all while male colleagues with less seniority were retained in her former role. *Id*.

By contrast, Walsh identifies no such transfer, loss of prestige, change in schedule, or other objective detriment to the terms or conditions of her employment. WAPP 107. Her job title, pay, and benefits remained unchanged. *Id*. The only employment action she identifies—the issuance of a PIP—was based on documented performance concerns and was not accompanied by any demotion, salary reduction,

28

or loss of responsibilities. WAPP 118-19, 127, 149-51. The PIP had undisputably expired nearly a year prior to her resignation. The undisputed facts are that she was not in line for termination or any other adverse action. There is no evidence that the PIP or any other conduct was motivated by age bias.

While *Muldrow* rejected the notion that a plaintiff must demonstrate a "significant" disadvantage to show an adverse action (*id.* at 355), that clarification does not control the outcome here. *Muldrow* concerned the *degree* of harm required in a Title VII transfer case—not the *requirement* that a plaintiff still prove discrimination. See *id*. at 359. Crucially, the Court in *Muldrow* emphasized that the challenged action must still result in the employee being "worse off" due to a protected trait. *Id.*; *see also Rios v. Centerra Group LLC*, 106 F.4th 101, 112 (1st Cir. 2024). Walsh has not shown that she was left "worse off" in any material way, nor has she presented competent evidence of age-based animus.

Courts in this Circuit have consistently held that performance feedback, personality disputes, and ordinary workplace frictions do not constitute adverse actions. *See Bhatti v. Trustees of Boston Univ.*, 659 F.3d 64, *73 (1st Cir. 2011). Walsh's allegations—being asked to modify her communication style, receiving critical feedback, and having her job responsibilities clarified or shifted—are not legally actionable under either the ADEA or Chapter 151B.

Despite continuing to work at HNTB for nearly a year after the PIP's conclusion—with no demotion, no reduction in pay or benefits, and no change in title—Walsh now claims she suffered an adverse action based on speculative inferences, isolated remarks, and subjective dissatisfaction. That falls far short of the threshold necessary to establish even the "modest" prima facie case required under *McDonnell Douglas.* See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Mesnick v. General Electric Co.,* 950 F.2d 816, 823 (1st Cir. 1991); *Tombeno v. FedEx Corp. Servs.,* 284 F. Supp. 3d 80, 86 (D. Mass. 2018); *Robinson v. Town of Marshfield,* 950 F.3d 21, 25 (1st Cir. 2020).

Put simply, *Muldrow* does not compel a different result. That decision addressed a materially different fact pattern and did not dispense with the foundational requirement that the challenged action must be *because of* a protected characteristic. Because Walsh has failed to produce evidence of either pretext or discriminatory motive, her claim cannot proceed. The district court correctly found that no adverse action occurred as a matter of law.

### b.   Walsh Was Not Constructively Discharged.

To establish constructive discharge, a plaintiff must show that her working conditions "were so difficult or unpleasant that a *reasonable* person in [her] shoes would have felt compelled to resign." *Marrero v. Goya of P.R., Inc.,* 304 F. 3d 7, 28 (1st Cir. 2002) (internal quotation marks omitted). The standard is an objective one;

an employee's subjective perceptions do not govern. *Marrero,* 304 F. 3d at 28; *Suárez v. Pueblo Int'l, Inc.,* 229 F. 3d 49, 54 (1st Cir. 2000); *See Exum v. U.S. Olympic Comm.,* 389 F.3d 1130, 1136 n.7 (10th Cir. 2004) ("[T]he fact that a plaintiff subjectively considers his or her workplace stressful and may have suffered personal health problems as a result is not an objective criterion used to determine if a reasonable employee would have been compelled to resign."). It is not enough that a plaintiff suffered "the ordinary slings and arrows that workers routinely encounter in a hard, cold world." *Suárez,* 229 F. 3d at 54.

The undisputed record here demonstrates that Walsh remained employed at HNTB for nearly a year after the completion of her PIP. WAPP 99, 109, 118-19, 121, 130 (Walsh's PIP ended on November 1, 2019 and she resigned on September 11, 2020). During that period, she was not demoted, reassigned, or placed on another performance plan. WAPP 107. Her compensation, title, and benefits remained unchanged. *Id*. By her own admission, she was under no immediate threat of termination at the time of her resignation. WAPP 116. These facts are inconsistent with a claim of constructive discharge. *Suarez,* 229 F. 3d at 54 ("an inquiring court must gauge whether the working conditions imposed by the employer had become so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign").

Walsh argues that her work environment must be evaluated "cumulatively," asserting that the combination of her PIP, alleged managerial mistreatment, and isolated remarks rendered her continued employment intolerable. OB p. 34. But even considered collectively, the incidents she cites—interpersonal conflicts, shifting responsibilities, and generalized dissatisfaction—do not meet the standard for constructive discharge. *Id.* (1st Cir. 2000) ("The workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins.").

Moreover, courts have routinely rejected constructive discharge claims premised on similar allegations of managerial oversight, performance scrutiny, or strained workplace dynamics. *Cf. O'Rourke v. City of Providence,* 235 F.3d 713, 728 (1st Cir. 2001) (for hostile work environment, plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."). Walsh's voluntary resignation was not a forced or inevitable consequence of HNTB's conduct.

Because the undisputed facts do not demonstrate working conditions that were objectively intolerable, the district court correctly concluded that no reasonable jury could find constructive discharge.

      c.    <u>Walsh Fails to Establish the Remaining Elements of Her Prima Facie Case.</u>

Even assuming that Walsh satisfies the first two elements of her prima facie case, she has not demonstrated any adverse action occurred under circumstances giving rise to an inference of age discrimination.

Walsh's claim rests almost entirely on a single alleged remark by her supervisor that she could be replaced by "younger, cheaper" employees. OB pp. 33-34. But this statement, unconnected to any specific employment decision, is the type of stray comment that courts routinely find insufficient to establish discriminatory animus. *See González v. El Día, Inc.*, 304 F.3d 63, 69 (1st Cir. 2002) ("stray remarks" by decisionmakers insufficient).

Isolated comments, particularly when temporally irrelevant to the alleged adverse action, do not satisfy the burden of showing that age was a motivating factor in an employment decision. *See Shorette v. Rite Aid of Maine, Inc.*, 155 F.3d 8, *13 (1st Cir. 1998). Walsh points to no employment decision—much less a materially adverse one—that followed from or was influenced by the remark in question, which predates her resignation by nearly a year.

Walsh also identifies general feedback suggesting she needed to "stretch," be more "flexible," or "keep pace" with business demands. OB p. 39. But such comments are facially age-neutral and appear in performance reviews across industries. Courts have rejected attempts to reframe these common evaluative terms

33

as code for discriminatory bias. *Thomas v. Gandhi*, 650 F. Supp. 2d 35, 40 (D.D.C. 2009), *aff'd,* 377 F. App'x 25 (D.C. Cir. 2010) (ambiguous comments insufficient without context tying them to age).

The record also lacks any evidence of disparate treatment. Walsh does not identify any similarly situated, younger employees who were treated more favorably under comparable circumstances. In fact, nearly everyone involved in evaluating her performance was substantially similar in age. WAPP 168-69. As was her replacement, which the undisputed record shows was hired solely because of the bind that the department found itself in when she resigned. WAPP 131. The absence of a younger comparator is fatal to her claim; courts routinely note that substantially similar ages of decision-makers and replacements negate an inference of differing treatment based on age. *See Knight v. Avon Prods.,* 780 N.E.2d 1255, 1265 (2003) (no inference of discrimination where no evidence of differential treatment).

To the contrary, Walsh received positive feedback on her success completing the PIP and continued in her position without discipline, demotion, or loss of pay. Her resignation was not preceded by any employment action that would suggest a discriminatory motive, and the record as a whole does not support an inference of age-based animus.

Walsh's claims, though framed as age discrimination, rest largely on ordinary workplace dissatisfaction and speculative inferences. Chapter 151B and the ADEA

are not general civility codes. They prohibit adverse treatment because of age—not personality conflicts, performance feedback, or disappointment with job responsibilities.

The summary judgment record contains no genuine dispute of material fact regarding whether Walsh suffered an adverse employment action, was constructively discharged, or was subjected to discrimination because of her age. Without admissible evidence of pretext or discriminatory motive, no reasonable jury could return a verdict in her favor.

### 2. HNTB Met Its Burden to Produce a Legitimate, Non-Discriminatory Reason Through Admissible Evidence.

Appellant's contention that HNTB failed to meet its burden under step two of the *McDonnell Douglas* framework—because its explanation allegedly rests on inadmissible hearsay—is both legally and factually incorrect. OB p. 40. The record before the District Court contained admissible, non-hearsay evidence demonstrating a legitimate, non-discriminatory reason for placing Walsh on a PIP, and that evidence was more than sufficient to satisfy HNTB's burden of production at the summary judgment stage.

### a. Step Two Imposes a Burden of Production, Not Persuasion.

As the Supreme Court has long made clear, the employer's obligation at step two is one of production, not proof. *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S.

248, 254–55 (1981). The employer need only "clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Id.* at 255. It does not require the employer to prove the truth of its reasons or to produce firsthand testimony from every individual involved in the underlying events. See *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993).

> b.    HNTB's Proffered Reason Was Supported by Admissible Evidence.

Contrary to Walsh's assertion, HNTB did not rely on "hearsay-upon-hearsay" to explain its actions. HNTB offered admissible evidence—through sworn deposition testimony, declarations, and documentary exhibits—demonstrating that Walsh was placed on a PIP due to legitimate concerns regarding responsiveness and support to supervisors.

Specifically, HNTB submitted the deposition testimony of Clark, Walsh's direct supervisor, who both authored the PIP and had direct involvement in evaluating her performance. WAPP 149-51. Clark testified that senior executives—including Brake and Bua—had expressed to him concerns that Walsh's work was impeding critical internal technology initiatives. WAPP 118-19, 149, 155-57, 272–73. These statements demonstrate the employer's state of mind and the non-discriminatory basis for placing Walsh on a PIP—purposes that are squarely within recognized exceptions to the hearsay rule. See *Fed. R. Evid.* 803(3).

Moreover, the record includes the PIP itself, which outlines the performance expectations and areas of concern—an internal business record created and maintained by HNTB in the ordinary course of its operations. WAPP 118-19; *see Fed. R. Evid.* 803(6). This documentary evidence further undermines any suggestion that HNTB relied solely on inadmissible testimony or informal complaints.

Appellant's insistence that HNTB was required to produce deposition testimony or affidavits from every individual who raised concerns—Brake, Bua, or Gregory—is misplaced. It is sufficient that HNTB provided admissible, firsthand testimony from a supervisor directly involved in implementing the PIP, and who had personal knowledge of the concerns raised.

### c.    The Alleged Contradictions Do Not Undermine Step Two.

Appellant also suggests that Clark's positive evaluations of Walsh in prior years contradict the rationale for the PIP. But even if earlier performance reviews were favorable, they do not negate HNTB's ability to raise new concerns as roles, expectations, and team dynamics evolve. Employers are entitled to reassess performance based on changed circumstances or feedback from stakeholders— particularly in technical or collaborative roles. If employers were bound by prior performance evaluations, a single year of positive reviews could virtually guarantee an employee's continued employment.  Notably, Walsh fails to note the undisputed

evidence that even in her 2018 evaluation of "met expectations" noted that she was at the bottom of that rung and improvement was needed. WAPP 133-39.

Regardless, whether those concerns were ultimately correct in her mind is not at issue in step two. The question is whether HNTB met its burden of production—which it plainly did.

### 3. Walsh Fails to Raise a Genuine Issue of Material Fact as to Pretext.

Even assuming Walsh established a *prima facie* case of discrimination, she would still fail at carrying her burden to produce evidence sufficient to support a rational inference that HNTB's stated reasons were a pretext for age discrimination.

Despite an exhaustive recitation of purported "indicia of pretext," Walsh's arguments ultimately amount to disagreements with her performance assessment, subjective interpretations of managerial decisions, and speculation about age-based motives. These are insufficient to withstand summary judgment under either both ADEA and Massachusetts General Laws Chapter 151B.

### a. Pretext Requires More Than Disagreement or Speculation.

To establish pretext, Walsh must point to specific facts in the record that would allow a reasonable jury to infer that HNTB's stated rationale for the PIP and related employment decisions was not merely incorrect, but a cover for unlawful discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147

38

(2000); *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 824 (1st Cir. 1991). "[C]ourts may not sit as super personnel departments, assessing the merits—or even the rationality—of employers' nondiscriminatory business decisions." *Mesnick*, 950 F.2d at 825.

None of the arguments Walsh raises suggest that HNTB's legitimate, performance-related concerns were so implausible, contradictory, or unworthy of belief as to permit a jury to infer discriminatory animus.

### b.    Alleged Inconsistencies Between the PIP and Past Reviews Do Not Support Pretext.

Walsh first points to perceived inconsistencies between the contents of the PIP and her prior performance reviews. But the mere fact that an employee previously received satisfactory performance evaluations does not insulate them from future scrutiny or discipline—especially when job expectations evolve.

The record reflects that the feedback leading to the PIP stemmed from a shift in internal team needs and expectations as well as customer service needs—not personal dislike or bias. WAPP 118. That Clark or Vealey may have praised certain traits in annual reviews does not undermine the legitimacy of concerns raised later by other supervisors. It is also irrelevant that Gregory, the ultimate decisionmaker, did not personally write the PIP; typically, upper management does not draft PIPs for employees who are directly supervised by others.  And as stated, she was being advised as early as 2018 that improvement was needed. WAPP 133-39.

c.   <u>Subjective Disagreements Over Office Cleanliness or Communication Style Are Not Evidence of Pretext.</u>

Walsh argues that the inclusion of complaints about her allegedly "messy" office or her communication style is so trivial or exaggerated that it must be pretextual. But courts routinely reject attempts to recast performance critiques as discriminatory simply because the employee deems them insufficiently serious. *See Kelley v. Corr. Med. Servs.*, 707 F.3d 108, 118 (1st Cir. 2013) (employer's actions must rise beyond "overreaction" to show pretext).

That HNTB expected Walsh to maintain a professional workspace is not inherently suspicious. Walsh's attempt to trivialize this concern does not create a genuine issue of material fact.

d.   <u>The Alleged Disparate Treatment Argument Is Unsupported.</u>

Walsh's claim of disparate treatment—based on comparisons with two younger coworkers (DeMarinis and Cordero)—fails for lack of relevant comparators. She identifies no evidence that those individuals engaged in similar conduct or exhibited similar performance deficiencies yet were treated more favorably. Without such evidence, no inference of disparate treatment arises. *See Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 129-30 (1997) (comparative evidence must involve similarly situated employees in similar circumstances).

40

The assertion that Allinson—a coworker of similar age—was also placed on a PIP actually undercuts, rather than supports, Walsh's pretext theory. If HNTB was targeting Walsh because of her age, it is unclear why another older employee would be similarly treated. She also fails to dispute that all the decisionmakers, and her replacement, were of similar protected age. WAPP 168-69.

>        e.    Stray Remarks and Alleged Stereotypes Do Not Establish Pretext.

Walsh attempts to infer age discrimination from various statements purportedly made by HNTB personnel, including references to "younger, cheaper" employees and alleged commentary about Walsh's "pace" or "flexibility." But isolated or ambiguous comments, untethered to the decision-making process, are insufficient to show pretext. *Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 75 n.3 (1st Cir. 2002).

Moreover, courts recognize that the use of business language—such as "adaptability," "keeping pace," or "stretching skillsets"—is common and not inherently ageist. *See Speen v. Crown Clothing Corp.*, 102 F.3d 625, 636 (1st Cir. 1996) ("[T]he relevant case law instructs us not to consider the statement standing alone but instead to look at all the evidence presented in the totality of the circumstances.").

No reasonable jury could conclude that these vague statements—some made by non-decisionmakers—amount to substantial evidence of age bias.

      f.     <u>Constructive Discharge Claim is Unsupported by Record Evidence.</u>

Finally, Walsh's assertion that she was constructively discharged relies entirely on her subjective perception of "mistreatment," not any objective, intolerable working conditions. To establish constructive discharge, a plaintiff must show that her working conditions were so difficult or unpleasant that a reasonable person would feel compelled to resign. *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 28 (1st Cir. 2002).

The summary judgment record reflects no such conditions. Walsh remained employed after the PIP was issued, received no demotion or cut in pay, and resigned voluntarily. Her disagreement with HNTB's managerial decisions does not establish constructive discharge. *Lee-Crespo v. Schering-Plough Del Caribe Inc.*, 354 F.3d 34, 45-46 (1st Cir. 2003).

## **CONCLUSION**

This appeal should be dismissed for lack of jurisdiction as the Notice of Appeal was untimely filed beyond the statutory deadline, and the District Court lacked authority to extend it. If this Court finds jurisdiction however, it should affirm the district court's summary judgment as the district court properly applied the law and correctly granted summary judgment in favor of HNTB.

Dated: October 3, 2025

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By:  */s/ Stephen I. Hansen*

Mark C. Tatum (1st Cir. 1212513)
Shook, Hardy & Bacon
2555 Grand Blvd.
Kansas City, MO 64108
(816) 474-6550

Stephen I. Hansen (1st Cir. 1207644)
Shook, Hardy & Bacon
One Federal Street, Suite 2540
Boston, MA  02110-2012
(617) 531-1411

*Counsel for Defendant-Appellee HNTB Corporation*

## CERTIFICATE OF COMPLIANCE WITH RULE 32

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that this brief: (1) complies with the type-volume limitations of Rule 32(a)(7)(B), as modified by Circuit Rule 32, because it contains 9610 words, including footnotes and excluding parts of the brief exempted by Rule 32(f); and (2) complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6), as modified by Circuit Rule 32, because it is set in Times New Roman font, size 14 points.

## **CERTIFICATE OF SERVICE**

I hereby certify that this Defendant-Appellee's Brief and Appendix, filed through the PACER/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.


*/s/ Stephen I. Hansen*
Stephen I. Hansen

No. 24-1499

---

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

JOANNE WALSH,
*Plaintiff-Appellant*

v.

HNTB CORPORATION
*Defendant-Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS, BOSTON
Case No. 1-22-CV-10453-NMG

---

ADDENDUM OF APPELLEE

---

Mark Tatum (1st Cir. 1212513)
SHOOK, HARDY & BACON
2555 Grand Blvd.
Kansas City, MO 64108
(816) 474-6550

Stephen I. Hansen (1st Cir. 1207644)
SHOOK, HARDY & BACON
One Federal Street, Suite 2540
Boston, MA  02110-2012
(617) 531-1411

*Counsel for Defendant-Appellee*

## <u>TABLE OF CONTENTS</u>

Defendant's Opposition to Plaintiff's Second Motion to File
Notice of Appeal Late (filed on April 1, 2024) ....................……………………….1

Appellee's Response to Appellant's July 22, 2024 Response Filing and
Motion to Dismiss Appeal (filed on August 7, 2024) ….………………………7

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

JOANNE WALSH,

      Plaintiff,

v.

HNTB CORPORATION,

      Defendant.

Civil Action No.: 1:22-cv-10453-NMG

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S SECOND MOTION TO FILE NOTICE OF APPEAL LATE

Defendant HNTB Corporation opposes Plaintiff Joanne Walsh's Second Request for Extension to File Notice of Appeal, treated as Second Motion to File Notice of Appeal Late. As grounds for this opposition, Defendant states that Plaintiff has not shown good cause or excusable neglect which would permit the Court to extend the time for filing a late appeal beyond the sixty (60) days allowed by Fed. R. App. P. 4.

### ARGUMENT

#### A. Legal Standard

"An unsuccessful litigant in a federal district court may take an appeal, as a matter of right, from a final decision of the district court." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 407, 135 S.Ct. 897, 190 L.Ed.2d 789 (2015) (internal marks omitted). Appeals as of right are governed by Federal Rule of Appellate Procedure 3, which provides that such appeals "may be taken only by filing a notice of appeal with the district court within the time allowed by Rule 4." Fed. R. App. P. 3(a). Rule 4(a)(1)(A) provides that the notice of appeal "must be filed with the district clerk within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A).

ADDENDUM 1

Under special circumstances, not present here, the district court "may extend the time to file a notice of appeal if: (i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and (ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause." Fed. R. App. P. 4(a)(5)(A). However, "[n]o extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later." Fed. R. App. P. 4(a)(5)(C).

To determine whether a party's neglect is excusable, the Court should consider the following factors: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'Ship*, 507 U.S. 380, 395 (1993).  This decision is equitable in nature. *Id.* The Supreme Court has held that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect[.]'"  *Id.* at 392.

## B. Plaintiff is Out of Time to Appeal

The Final judgment—the order which disposed of all claims of the Plaintiff— was entered on December 21, 2023. *See* ECF No. 45. On January 19, 2024, Plaintiff requested a 60-day extension to seek counsel for her appeal. *See* ECF No. 46. The Court granted Plaintiff's request and set a deadline of Friday, March 29, 2024 for Plaintiff's notice of appeal. *See* ECF No. 47. Plaintiff failed to file an appeal by March 29, 2024. Instead, Plaintiff filed a Second Motion for Extension, within a supporting affidavit. In total, Plaintiff has had 99 calendar days to file a notice of appeal. Any additional extension would violate Fed. R. App. P. 4(a)(5)(C). Therefore, the Court should deny Plaintiff's Motion for an Extension.

### C. Plaintiff Fails to Show Good Cause for An Extension

Federal Rule of Appellate Procedure 4 provides that a party may seek an extension for "excusable neglect or good cause" "regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires." Fed. R. App. P. 4(a)(5)(A)(ii); *see also Virella-Nieves v. Briggs & Stratton Corp.*, 53 F.3d 451, 453 (1st Cir. 1995) (quoting *Scarpa v. Murphy*, 782 F.2d 300, 301 (1st Cir. 1986)) ("Rule 4(a)(5) 'expressly recognizes "good cause" as a basis for extension both before and after the expiration of the appeal time.' "). "The good cause standard applies in situations where there is no fault- excusable or otherwise. In such situations, the need for an extension is usually occasioned by something that is not within the control of the movant." *Torrey v. Dep't of Elem. & Secondary Educ. Appeals*, 952 F. Supp. 2d 304, 306 (D. Mass. 2013) (quoting Advisory Committee Notes to Fed. R. App. P. 4).

Here, Plaintiff's sole justification for not filing a notice of appeal is her continued effort to seek appellate counsel. *See* ECF. No. 49. This issue is within Plaintiff's control. *See O'Brien v. Wilmington Tr. Nat'l Ass'n,* 517 F. Supp. 3d 54, 58-59 (D. Mass. 2021) (finding plaintiff obtaining new appellate counsel is within her control and denied plaintiff's second request for an extension). Even if she was incapable of obtaining appellate counsel before the deadline to file her notice of appeal, she provides no explanation for why this has prevented her from filing a notice of appeal. Plaintiff has not shown that she was prevented from appealing by forces beyond her control. Therefore, she has not shown good cause for her failure to do so and her Motion for Extension should be denied.

### D. Plaintiff Fails To Show Excusable Neglect

For excusable neglect, the inquiry "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395. "These

include ... the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

The reasoning Plaintiff provides for the requested extension has been within her control. *See O'Brien,* 517 F. Supp. at 59 (D. Mass. 2021). She offers no explanation as to why she could not and has not filed a notice of appeal while she seeks appellate counsel. Plaintiff merely repeats the same reasons as she did in her first motion for extension. Between the initial thirty (30) days provide by Fed. R. App. P. 4 and the extended period afforded pursuant to her first motion for extension, Plaintiff had ample time to find new counsel. Defendant will be prejudiced if this case is delayed any further. It would be inequitable to allow the Plaintiff's second motion to extend and, therefore, the Motion should be denied.

### E. Plaintiff's Motion Does Not Comply with Local Rule 7.1

Plaintiff's Motion does not comply with the requirements of Rule 7.1 of the Local Rules of the United States District Court for the District of Massachusetts. Rule 7.1 states:

> A party filing a motion shall at the same time file a memorandum of reasons, including citation of supporting authorities, why the motion should be granted. Affidavits and other documents setting forth or evidencing facts on which the motion is based shall be filed with the motion.

Local Rule 7.1(b)(1).

Plaintiff did not file a supporting memorandum or an affidavit setting forth the facts she alleges in the motion. The court should, therefore, deny the Motion for failure to comply with Rule 7.1. *See Rissman Hendricks & Oliverio, LLP v. MIV Therapeutics Inc.*, No. CV 11-10791-MLW, 2013 WL 12321564, at *1 (D. Mass. June 14, 2013) ("A district court may deny a motion, without prejudice, for failure to comply with the Local Rules.").

ADDENDUM 4

## CONCLUSION

In conclusion, for the reasons set forth above, the Court should deny Plaintiff's Second Motion for Leave to File Notice of Appeal Late.

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

DATED: April 1, 2024                By: */s/ Ivelisse Saint-Clair*
                                    Stephen I. Hansen (BBO# 679134)
                                    SHOOK, HARDY & BACON L.L.P.
                                    One Federal St., Ste. 2540
                                    Boston, MA 02110
                                    Telephone: (617) 531-1674
                                    Facsimile: (617) 531-1602
                                    sihansen@shb.com

                                    Mark Tatum (admitted pro hac)
                                    Ivelisse Saint-Clair (admitted pro hac)
                                    SHOOK, HARDY & BACON L.L.P.
                                    2555 Grand Blvd.
                                    Kansas City, MO 64108
                                    Telephone: (816) 474-6550
                                    Facsimile: (816) 421-5547
                                    mtatum@shb.com
                                    iclair@shb.com

                                    Attorneys for Defendant HNTB Corporation

ADDENDUM 5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 1, 2024, a true and correct copy of the above and foregoing

was filed via the Court's CM/ECF filing system and served via the same upon the following:

Joanne Walsh
28 Gardner Street
Peabody, MA 01960

PLAINTIFF

  /s/ Ivelisse L. Saint-Clair  
*Attorney for HNTB*

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

| | |
|---|---|
| JOANNE WALSH | No. 24-1499 |
| Appellant, | |
| v. | |
| HNTB CORPORATION | |
| Appellee. | |

## APPELLEE'S RESPONSE TO APPELLANT'S JULY 22, 2024 RESPONSE FILING AND MOTION TO DISMISS APPEAL

## I. INTRODUCTION

Defendant-Appellee HNTB Corporation ("HNTB") responds to the submission of the Plaintiff-Appellant Joanne Walsh ("Ms. Walsh") dated July 22, 2024 in response to this Court's order dated July 11, 2024 and moves to dismiss this appeal as untimely. Ms. Walsh, initially proceeding *pro se*, but now represented by counsel, filed a notice of appeal on May 15, 2024 seeking to appeal the district court's December 21, 2023 order granting summary judgment in favor of HNTB and dismissing the case. This was *well over four months after her deadline* to notice an appeal had passed. Ms. Walsh's submission confirms that the notice of appeal is untimely. The Rules of Appellate Procedure do not permit a nearly four-

month extension and this Court lacks jurisdiction to hear an untimely appeal. Accordingly, this appeal should be dismissed.

## II. ARGUMENT

"An unsuccessful litigant in a federal district court may take an appeal, as a matter of right, from a final decision of the district court." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 407, 135 S.Ct. 897, 190 L.Ed.2d 789 (2015) (internal marks omitted). Appeals as of right are governed by Federal Rule of Appellate Procedure 3, which provides that such appeals "may be taken only by filing a notice of appeal with the district court within the time allowed by Rule 4." Fed. R. App. P. 3(a). Rule 4(a)(1)(A) provides that the notice of appeal "must be filed with the district clerk **within 30 days** after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A)(emphasis added). Rule 4 provides that:

> (A) The district court may extend the time to file a notice of appeal if:
> > (i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and
> > (ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

Fed. R. App. P. 4(a)(5)(A).

The relevant procedure and timing of Plaintiff-Appellant's actions are as follows:

1. The District Court entered final judgment in this matter on December 21, 2023;

2. Plaintiff-Appellant filed a Request for Extension to File Notice of Appeal on January 19, 2024 ("First Motion");

3. Plaintiff-Appellant filed a Second Request for Extension to File Notice of Appeal on March 18, 2024 ("Second Motion").

4. Plaintiff-Appellant filed a Third Request for Extension to File Notice of Appeal on May 13, 2024 ("Third Motion");

5. Plaintiff-Appellant filed a Motion for Leave to File Notice of Appeal, with a proposed Notice of Appeal, on May 15, 2024 ("Motion for Leave"); and

6. Plaintiff-Appellant filed a Notice of Appeal on May 15, 2024 (this Notice of Appeal differs from the proposed Notice of Appeal referenced above).

The relevant issues are: (1) whether the Second or Third Motions for Extensions, or, the Motion for Leave, were timely; (2) whether any motion served as the functional equivalent of a notice of appeal; and (3)

whether Ms. Walsh has shown either good cause or excusable neglect for filing her Notice of Appeal approximately four months after her appeal deadline lapsed.

### A. Plaintiff-Appellant's Appeal Should Be Dismissed as Untimely.

As indicated within this Court's July 11, 2024 Order, Plaintiff-Appellant failed to timely notice an appeal and the Court lacks jurisdiction over this appeal and it should be dismissed. The time limit to file a notice of appeal under Rule 4(a) is "mandatory and jurisdictional." *Browder v. Dir., Dep't of Corr. of Illinois*, 434 U.S. 257, 264 (1978). "[I]t is settled that a civil appeal filed out of time is barred [and] that the error in timing cannot be waived" by the Court. *McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 213 (1st Cir. 2012); *see also Vaqueria Tres Monjitas, Inc. v. Comas-Pagan*, 772 F.3d 956, 958-60 (1st Cir. 2014). The Court "may not waive the jurisdictional requirements of Rules 3 and 4, even for 'good cause shown . . . if it finds that they have not been met.'" *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 (1988); *see also, Wyzik v. Employee Ben. Plan of Crane Co.*, 663 F.2d 348, 348 (1st Cir. 1981) (courts of appeals "cannot extend the time for filing" a notice of appeal). In other words, the Court "has no authority to create equitable exceptions to

4

jurisdictional requirements." *Bowles v. Russell*, 551 U.S. 205, 214 (2007);

*United States v. Wong*, 135 S. Ct. 1625, 1631 (2015) (deadline made

"jurisdictional" by Congress cannot be waived or forfeited or set aside for

equitable reasons). In addition, "[a]t any time ... on motion of appellee or

sua sponte, the court may dismiss the appeal . . . if the court lacks

jurisdiction." 1st Cir. R. 27.0(c).

The purpose of the time limit to seek an appeal under the Rules is

well-settled: it is "to set a definite point of time when litigation shall be

at an end." *Browder*, 434 U.S. at 264 (quoting *Matton Steamboat Co. v.

Murphy*, 319 U.S. 412, 415 (1943)); *accord Piazza v. Aponte Roque*, 909

F.2d 35, 39 (1st Cir. 1990). There are no exceptions for *pro se* plaintiffs,

like Plaintiff-Appellant. Although "[a] pro se litigant, like any litigant, is

guaranteed a meaningful opportunity to be heard," *Eagle Eye Fishing

Corp. v. U.S. Dep't of Com.*, 20 F.3d 503, 506 (1st Cir. 1994), this Court

has consistently held that the "right of self-representation is not a license

not to comply with relevant rules of procedural and substantive law." *See,

e.g., Xiaoyan Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 220 n.13 (1st Cir.

2016) (citations omitted). The bottom line here is that Plaintiff-

Appellant's Second Motion and Third Motion, as well as her Motion for

Leave, were all untimely.  It makes no difference that each of the motions were essentially seeking more and more time. Plaintiff-Appellant was required to file the motions within the 30 day deadline and failed to comply with the rules.

### B. Plaintiff-Appellant's Motions for Extension and Motion for Leave were not the functional equivalent of a notice of appeal sufficient to meet her obligations under Fed. R. App. P. 3.

Ms. Walsh's First Motion for extension filed in the District Court on January 19, 2024 was not the functional equivalent of a notice of appeal. An aspiring notice of appeal thus "must specify" not just any "party" but "the party ... taking the appeal," Fed. R. App. P. 3(c)(1)(A); it must designate not just any court but "the court to which the appeal is taken," Fed. R. App. P. 3(c)(1)(C); and it must designate not just any order but "the ... order [or orders] ... being appealed," Fed. R. App. P. 3(c)(1)(B). A motion for an extension of time to file a notice of appeal can only qualify as the functional equivalent of a notice of appeal if it specifies the party taking the appeal, the judgment being appealed from, the court to which the appeal is to be taken, and must clearly evince an intent to seek appellate review. *Counts v. Wilson*, 699 F. App'x 779, 782 (10th Cir. 2017). If a motion for an extension of time does not designate which

judgment is being appealed or does not convey an intent to appeal, it will not be treated as a notice of appeal. *Clark v. Cartledge*, 829 F.3d 303, 305 (4th Cir. 2016); *Isert v. Ford Motor Co.*, 461 F.3d 756, 759 (6th Cir. 2006). Additionally, subjective uncertainty about the party's desire to appeal or the mere act of seeking more time without the requisite notice elements prevents a motion for an extension from satisfying the requirements of a notice of appeal. *Isert*, 461 F.3d at 761.

None of the three Motions for Extensions, nor the Motion for Leave, met these requirements. They did not designate the judgment being appealed from nor the court to which the appeal is to be taken. In fact, the First, Second, and Third Motions for Extension did not express an actual intent to seek appellate review.

First, nowhere within the motions does Plaintiff-Appellant mention the decision to grant HTNB's the motion for summary judgment. Second, the motions for an extension of time do not identify this Court as the court in which the appeal is to be taken. Finally, the motions for an extension of time never state that Plaintiff-Appellant will actually seek appellate review. Plaintiff-Appellant only indicated a need to find another attorney to provide representation and "decide if they can handle it." Similar to

the Plaintiff-Appellant in *Isert*, Plaintiff-Appellant filed a motion for "request extension to file Notice of Appeal" which fails to state that she intended to appeal. Moreover, Plaintiff-Appellant could have appealed more than one judgment – or part thereof – because the district court issued at least three substantive appealable judgments on separate state and federal law claims.[1] The motion for extension fundamentally failed to satisfy the requirements of a notice of appeal, including, most importantly, what Ms. Walsh intended to appeal, if anything.

### C. The District Court should not have enlarged the time to file a notice of appeal.

The district court wrongly granted Plaintiff-Appellant's three separate requests for an extension over *four months* after the deadline under Federal Rule of Appellate Procedure 4(a)(1)(A). A motion to extend the time must be filed no later than 30 days after the time prescribed by Rule 4(a) expires. *See* Fed. R. App. P. 4(a)(5); *Virella-Nieves v. Briggs & Stratton Corp.*, 53 F.3d 451, 453 (1st Cir. 1995). A district court's

---

[1] Judge Nathaniel M. Gorton's December 21, 2023 ordered summary judgment as to Count I: Discrimination on the Basis of Age in Violation of M.G.L. c. 151B, Count II: Discrimination on the Basis of Age in Violation of 29 § 621-634 (ADEA), and Count III: Breach of Covenant of Good Faith and Fair Dealing.

authority to enlarge the time to file a notice of appeal, under Rule 4(a)(5), requires a showing of excusable neglect or good cause. *United States v. Silva*, 791 F. Supp. 2d 272, 273 (D. Mass. 2011); Fed. R. App. P. 26(b)(1) (prohibiting courts from extending time to file notice of appeal except as authorized by Rule 4). Furthermore, the district court's discretion to grant such an extension is *conditioned on the movant demonstrating* either good cause or excusable neglect. *Mirpuri v. ACT Mfg.*, 212 F.3d 624, 630 (1st Cir. 2000) (emphasis added).

Plaintiff-Appellant's attempt to seek and identify appellate counsel does not constitute as "good cause." *O'Brien v. Wilmington Tr. Nat'l Ass'n*, 517 F. Supp. 3d 54, 58-59 (D. Mass. 2021) (finding Plaintiff did not show she was prevented from appealing by forces beyond her control when seeking appellant counsel and therefore, has failed to show good cause). The retention of appellate counsel was in Plaintiff-Appellant's control at all times, and accordingly, did not constitute as good cause for extension. *See id.*

Further, Plaintiff-Appellant has not demonstrated the unique or extraordinary circumstances required to demonstrate excusable neglect. *Mirpuri*, 212 F.3d at 631. For a showing of excusable neglect, a court

takes into account "all relevant circumstances surrounding the movant's omission, including the danger of prejudice to the non-movant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*, at 630-31 (quotations omitted). Here, Plaintiff-Appellant requested multiple extensions, totaling approximately four months after the appeal deadline under Rule 4. The sole basis for repeated extensions past the deadline for notice of appeal was the same each time – an attempt to seek appellate counsel. This fails to satisfy the requirement of unique or extraordinary circumstances, and the district court should not have granted multiple extensions.[2]

### III.     CONCLUSION

The purpose of the Rules governing the time to file a notice of appeal is to "set a definite point of time when litigation shall be at an end." *Browder*, 434 U.S. at 264 (citations omitted). Plaintiff-Appellant did

---

[2] Additionally, following the Second Motion, HNTB filed an opposition to Plaintiff-Appellant's Second Motion for an Extension of Time and noted Plaintiff-Appellant's failure to timely file a notice of appeal, show good cause or excusable neglect for the extension and comply with Local Rule 7.1.

not timely seek an appeal. This litigation is at an end, Plaintiff-Appellant's notice of appeal is untimely, and this Court therefore lacks jurisdiction to hear this appeal. This appeal should be dismissed.

Respectfully Submitted,

HNTB Corporation, Defendant-Appellee,

/s/ Mark C. Tatum
MARK C. TATUM (1st Cir. #1212513)
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
mtatum@shb.com

STEPHEN I. HANSEN (1st Cir. # 1207644)
Shook Hardy and Bacon
One Federal Street, Suite 2540
Boston, MA  02110-2012
Phone:  617.531.1411
Fax:  617.531.1602
sihansen@shb.com

*Counsel for Defendant-Appellee HNTB Corporation*

# CERTIFICATE OF SERVICE

I hereby certify that on the 7th of August, 2024, I electronically filed the foregoing documents with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be serviced by the CM/ECF system:

Michaela C. May
Bennett & Belfort, P.C.
24 Thorndike Street, Suite 300
Cambridge, MA 02141
(617) 577-8800 x211
mmay@bennettandbelfort.com

/s/ *Mark C. Tatum*
Mark C. Tatum

*Counsel for Appellee*

## Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

This motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because this document contains 2074 words.

This motion also complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), Rule 27(d)(1)(E) and Rule 32(a)(5) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Century Schoolbook font.

Respectfully submitted,

/s/ *Mark C. Tatum*
Mark C. Tatum

***Counsel for Appellee***