**No. 24-1499**

---

**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

---

JOANNE WALSH,
*Plaintiff-Appellant*,

*v.*

HNTB CORP.,
*Defendant-Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS
Case No. 1:22-CV-10453-NMG

---

**REPLY BRIEF OF APPELLANT JOANNE WALSH**

---

Michaela C. May (1st Cir. Bar #1152971)
Zachary H. Hammond (1st Cir. Bar #1199716)
Bennett & Belfort, P.C.
24 Thorndike Street, Suite 300
Cambridge, MA 02141
T: (617) 577-8800 x211
F: (617) 577-8811
mmay@bennettandbelfort.com
zhammond@benenttandbelfort.com

# TABLE OF CONTENTS

Contents.................................................................................................... ii

Table of Authorities................................................................................ iii

Argument....................................................................................................1

    I.    Walsh's Initial, *Pro Se* Motion of January 19, 2024, Set Forth
         All Information Required in Rule 3. .............................................1

    II.   HNTB Construes the Facts and the Law in an
         Over-Narrow Fashion. ..................................................................3

        A. Walsh Experienced an Adverse Action as Defined
           in *Muldrow*. ...........................................................................3

        B. The Five Levels of Inadmissible Hearsay That HNTB
           Proffers Do Not Meet Its Burden of Production ...................6

        C. The So-Called "Stray Remarks" Doctrine is Inapt ..............7

Conclusion/Relief Sought .......................................................................11

Certificate of Compliance .......................................................................13

Certificate of Service ..............................................................................13

Addendum .........................................................................................ADDi

# TABLE OF AUTHORITIES

## Cases

*Adams v. Schneider Electric USA*, 492 Mass. 271 (2023)......................................11

*Barton v. Clancy*, 632 F.3d 9 (1st Cir. 2011)...............................................5

*Calero-Cerezo v. United States Department of Justice*, 355 F.3d 6
    (1st Cir. 2004).........................................................................4

*Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559 (1st Cir. 1986)............................5

*Campiti v. Matesanz*, 333 F.3d 317 (1st Cir. 2003)......................................1

*Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81 (2d Cir. 1996)..........................5

*Cruzado v. Alves*, 89 F.4th 64 (1st Cir. 2023) .......................................1, 2

*Dávila v. Corporación de P.R. para la Difusión Pública*,
    498 F.3d 9 (1st Cir. 2007).........................................................7

*Diaz v. Jiten Hotel Management*, 762 F. Supp. 2d 319
    (D. Mass. 2011)................................................................8, 9

*Gonpo v. Sonam's Stonewalls & Art, LLC*, 41 F.4th 1
    (1st Cir. 2022) ...................................................................3

*Hannon v. Beard*, 645 F.3d 45 (1st Cir. 2011) ........................................7

*Hernandez-Loring v. Universidad Metropolitana*, 233 F.3d 49
    (1st Cir. 2000) ...................................................................9

*Muldrow v. City of St. Louis*, See 601 U.S. 346 (2024)..................................3, 4, 5

*O'Neill v. New York Times Co.*, 145 F. App'x 691 (1st Cir. 2005)..........................4

*O'Rourke v. City of Providence*, 235 F.3d 713 (1st Cir. 2001) .........................9, 10

*Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989)...................................8

*Simas v. First Citizens' Fed. Credit Union*, 170 F.3d 37
(1st Cir. 1999) ................................................................. 4, 5, 6

*Smith v. Barry*, 502 U.S. 244 (1992) ........................................1

*Texas Dept. of Community Affairs v. Burdine*,
450 U.S. 248 (1981) ............................................................7

*Velez-Ramirez v. Puerto Rico*, 827 F.3d 154 (1st Cir. 2016) ................6

*Williams v. Gen. Motors Corp.*, 187 F.3d 553 (6th Cir. 1999) ..............10

*Wilson v. Recorded Future, Inc.*, No. 1:22-cv-11105-IT,
2025 U.S. Dist. LEXIS 193072 (D. Mass. Sep. 30, 2025) ..............10

*Wynn & Wynn, P.C. v. Mass. Comm'n Against Discrimination*,
431 Mass. 655 (2000) .........................................................9


## Statutes, Rules, and Regulations

12 U.S.C. § 1790b(a) .................................................................5

29 U.S.C. § 216(B) ....................................................................12

29 U.S.C. § 623(a)(1) ................................................................4

42 U.S.C. § 1983 ......................................................................6

42 U.S.C. § 2000e-2(a)(1) ........................................................4

Fed. R. App. P. 3 .................................................................1, 3

Fed. R. App. P. 3(c)(1) ............................................................2

Fed. R. App. P. 3(c)(1)(B) .......................................................3

Fed. R. App. P. 3(c)(4) ............................................................3

Mass. Gen. Laws ch. 151B, § 9 ..............................................12

**<u>Other Authorities</u>**

Michael Zimmer, Slicing & Dicing of Individual Disparate
    Treatment Law, 61 La. L. Rev. 577 (2001) .........................................................9

# ARGUMENT

### I.    Walsh's Initial, *Pro Se* Motion of January 19, 2024, Set Forth All Information Required in Rule 3.

After *Smith v. Barry*, 502 U.S. 244 (1992), "the determination of whether a filing is the functional equivalent of a notice to appeal 'depend[s] on [the filing's] content and surrounding circumstances rather than on any general rule.'" *Cruzado v. Alves*, 89 F.4th 64, 70-71 (1st Cir. 2023), *quoting Campiti v. Matesanz*, 333 F.3d 317, 320 (1st Cir. 2003). Here, as in *Cruzado* and *Campiti*, the content of the Walsh's January 19, 2024, motion seeking an extension of time and the circumstances surrounding it were sufficiently clear to satisfy the substantive requirements of Rule 3—even though the motion contemplated the filing of a further notice of appeal. *Cruzado*, 89 F.4th at 71-72 ("What mattered [in *Campiti*] was whether the motion at issue evidenced the movant's intent to appeal, even if the filing on its face contemplated that the notice of appeal itself would be filed only later.") Walsh's *pro se* motion stated:

> I, Joanne Walsh, am respectfully submitting a request for an extension to file a notice of appeal. I was notified by my (former) attorney on 1/8/24 that their firm does not handle appeals and I would need to find another attorney. I am actively searching for a firm to represent me . . . .

Appendix ("Appx.") 14. Walsh's intent to appeal is plainly manifest here.

Likewise, the other substantive requirements of Rule 3 are met. The District Court issued its summary judgment decision and judgment of dismissal on

December 21, 2023. When Walsh filed her *pro se* request less than 30 days later, there could be no doubt precisely who the parties to her appeal would be, what order or judgment she sought to appeal, and to which court. *See* Fed. R. App. P. 3(c)(1). As to each question, there was only one answer: The only parties subject to the appeal could be the lone plaintiff and defendant in this case, i.e. Walsh and HNTB, both named in the caption of her *pro se* motion. Appx. 14; *see Cruzado*, 89 F.4th at 72 ("Cruzado's motion named the parties to the appeal because it named Cruzado and Alves in its caption.") Next, the only court to which Walsh could appeal was this Court. *See id.* ("Second, although Cruzado's motion did not name the court to which Cruzado intended to take his appeal, we agree that, consistent with *Smith*'s instruction to liberally construe the requirements of Rule 3, 'failures to meet this requirement are excused where there is only one court to which the appeal can be taken.'") (citation omitted).

Lastly, the only order Walsh could appeal was the court's order granting summary judgment, issued weeks earlier, after which judgment for HNTB issued that same day. ADD1, ADD13; *see Cruzado*, 89 F.4th at 73 ("But the motion did include the District Court docket number on its face, and the motion for an extension of time was the next filing on the docket after the only substantive order by the District Court in this case -- which, as it happens, was the order denying Cruzado's habeas petition -- and a companion order dismissing the case.")

2

HNTB's claim that Walsh could have intended to appeal one or more of the holdings in the summary judgment decision overstates an appellant's obligation under Rule 3, particularly as it was amended in 2021. *See Gonpo v. Sonam's Stonewalls & Art, LLC*, 41 F.4th 1, 10 (1st Cir. 2022); HNTB Brief ("HB") at 17-18. Rule 3 requires a would-be appellant to "designate the judgment—or the appealable order—from which the appeal is taken," Fed. R. App. P. 3(c)(1)(B). As the rule was amended, "[t]he notice of appeal encompasses all orders that, for purposes of appeal, merge into the designated judgment or appealable order" such that "[i]t is not necessary to designate those orders in the notice of appeal." *Gonpo*, 41 F.4th at 10 (alteration in original), *quoting* Fed. R. App. P. 3(c)(4). Accordingly, HNTB's claim that Walsh's initial, *pro se* motion was anything other than a "functional equivalent" of a notice appeal is incorrect. That Walsh later sought other extensions to file or that she later filed a document titled "notice of appeal," after securing counsel, does not change the fact that her initial motion filing met the notice requirements of Rule 3.

## II.    HNTB Construes the Facts and the Law in an Over-Narrow Fashion.

### A. Walsh Experienced an Adverse Action as Defined in *Muldrow*.

HNTB injects into its "adverse analysis" a "materiality" component that the Supreme Court expressly rejected in *Muldrow v. City of St. Louis*, 601 U.S. 346, 353 (2024); *see* HB at p. 29. The Supreme Court could not have been clearer:

"'Discriminate against' means treat worse . . . But neither that phrase nor any other says anything about how much worse." *Muldrow*, 601 U.S. at 355. Thus, there is no requirement in the Age Discrimination in Employment Act, as there is none in Title VII of the Civil Rights Act, that an adverse action be sufficiently "substantial" to be actionable. *See id.*; 42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 623(a)(1). Rather, a plaintiff need only show "some harm respecting an identifiable term or condition of employment."*Muldrow*, 601 U.S. at 354-355. In re-framing its approach to an employee's *prima facie* case in *Muldrow*, the Supreme Court acknowledged that meritless claims would be weeded out not by whether an action was sufficiently "adverse" to be unlawful, but by whether there were sufficient indicia that the adverse action stemmed from bias. *Id.* at 358. The plaintiff's *prima facie* case, of which an adverse action is a component, is not intended to be "onerous." *Calero-Cerezo v. United States DOJ*, 355 F.3d 6, 26 (1st Cir. 2004).

HNTB's anemic account of the record also improperly fails to depict the evidence in the light most favorable to Walsh as the non-moving party and overlooks evidence favorable to her to boot. *See O'Neill v. New York Times Co.*, 145 F. App'x 691, 694 (1st Cir. 2005). "At summary judgment the trial court must consider a defendant's alleged conduct both in context and in totality, not merely assess the respective allegations in isolation." *Simas v. First Citizens' Fed. Credit*

*Union*, 170 F.3d 37, 47-48 (1st Cir. 1999) (discussing the Federal Credit Union

Act, 12 U.S.C. § 1790b(a)), *citing Calhoun v. Acme Cleveland Corp*., 798 F.2d

559, 562-63 (1st Cir. 1986) (rejecting "divide-and-conquer" defense strategy).

"Thus, otherwise minor slights, relentlessly compounded, may become sufficiently

'adverse' to warrant relief . . . ." *Simas*, 170 F.3d at 48. Here, Walsh was denied

raises for the last three years of her employment[1]; was given a performance

improvement plan that nearly resulted in the termination of her employment but

that sharply contrasted with the praise in contemporaneous performance reviews;

was yelled at repeatedly by one manager and told to "shut up" by another; was

given contradictory and, at times, impossible and humiliating instructions; was

subject to unsupported and unjust criticism of her work; was stripped of various

job duties; and was told by her manager that she and another older colleague could

be replaced by "younger, cheaper people." Appx. 112-114, 116, 121, 243, 251-252,

255, 256, 261-264, 269. In other words, Walsh was treated worse, in numerous

ways, here because of her age. *See Muldrow*, 601 U.S. at 355; *cf. Barton v. Clancy*,

---

[1]      An employee who, for several years does not receive a pay raise even commensurate with inflation, is essentially experiencing a reduction in pay. A jury may infer that Walsh—who had received regular pay raises from HNTB when she was younger—observed that her pay was only going down. Appx. 197-198. This is one piece of Walsh's *cumulative* experience that the jury must be permitted to consider. *See Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 90 (2d Cir. 1996) ("Because a reasonable person encounters life's circumstances cumulatively and not individually, it was error to treat the various conditions as separate and distinct rather than additive. Viewed as a whole, the facts in the case at hand, if proven, would permit a finder of fact to conclude that Chertkova was forced to resign.")

632 F.3d 9, 29 (1st Cir. 2011) (given the lack of a "materiality" requirement for First Amendment retaliation claims, "[e]ven 'relatively minor events' can give rise to [42 U.S.C.] § 1983 liability") (citation omitted). The jury may view these harms separately, as individual adverse actions, but also may view them as harm heaped upon harm, such that the weight of HNTB's discriminatory acts ultimately weighed so heavily on Walsh and Lindsay Allinson ("Allinson") that these two older workers felt compelled to resign, and on the same day, at that. In the real workplace, events do not happen in a vacuum; experiences necessarily build on each other, sometimes until a person reaches a breaking point. *See Simas*, 170 F.3d at 48.

### B. The Five Levels of Inadmissible Hearsay That HNTB Proffers Do Not Meet Its Burden of Production.

HNTB also understates its burden on summary judgment to the point of eviscerating its obligation entirely. Walsh having established a *prima facie* case of discrimination, HNTB was obliged to produce "*admissible* evidence of a nondiscriminatory reason for its actions[.]" *Velez-Ramirez v. Puerto Rico*, 827 F.3d 154, 158 (1st Cir. 2016) (emphasis added). Instead, HNTB proffers multiple levels of inadmissible hearsay, to wit, the purported (and vague) laments of (i) Gary Bua and Phil Blake, which were then laundered through (ii) Steve Hague to (iii) Mark Gregory and to (iv) David Gregory in succession before being memorialized in the performance improvement plan written by (v) Walsh's supervisor, James Clark

("Clark"). Appx. 88, 149. Clark—the only of these individuals who testimony is in the record—reported that the claims in the PIP (also hearsay) were relayed to him from Gregory, and contrary to HNTB's position, Clark testified that Walsh's (and Allinson's) performance met his own expectations. Appx. 148-149.

"'It is black-letter law that hearsay evidence cannot be considered on summary judgment' for the truth of the matter asserted." *Hannon v. Beard*, 645 F.3d 45, 49 (1st Cir. 2011), *quoting Dávila v. Corporación de P.R. para la Difusión Pública*, 498 F.3d 9, 17 (1st Cir. 2007). Such flimsy, multi-layered hearsay is far short of the "admissible evidence" with which the employer must meet its burden. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 257 (1981).

### C. The So-Called "Stray Remarks" Doctrine Is Inapt.

The ageist statements in this case—including the statement by Walsh's manager that she could be replaced by "younger, cheaper" workers—are direct evidence of age bias, not mere "stray remarks" of no import as HNTB avers. Further, these comments do not stand alone, but with other evidence from which a jury can infer discriminatory motive, including evidence of pretext. *See* Walsh's Principal Brief at pp. 43-48.

As background, the so-called "stray remarks" doctrine is said to have stemmed from Justice O'Connor's concurrence in the seminal sex-stereotyping

7

case *Price Waterhouse v. Hopkins*. 490 U.S. 228, 251 (1989); *see Diaz v. Jiten Hotel Mgt.*, 762 F. Supp. 2d 319, 323 (D. Mass. 2011). The statements at issue in *Price Waterhouse*—including that the plaintiff needed "a course at charm school" and should "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry"—*were* recognized as direct evidence of bias, there based on gender. *Price Waterhouse*, 490 U.S. at 256 (plurality opinion). As Justice O'Connor wrote:

> In any event, the stereotyping in this case did not simply consist of stray remarks. On the contrary, Hopkins proved that Price Waterhouse invited partners to submit comments; that some of the comments stemmed from sex stereotypes; that an important part of the Policy Board's decision on Hopkins was an assessment of the submitted comments; and that Price Waterhouse in no way disclaimed reliance on the sex-linked evaluations. This is not, as Price Waterhouse suggests, 'discrimination in the air'; rather, it is, as Hopkins puts it, 'discrimination brought to ground and visited upon' an employee.

490 U.S. 228, 251 (1989) (O'Connor, J., concurring).

In the years that followed, some courts drew on this language to hold that certain "stray remarks" in the workplace are insufficient to meet plaintiff's burden. *See Diaz*, 762 F. Supp. 2d at 321-323 (providing a critical analysis of the "stray remarks" doctrine) (Gertner, J.).[2] But "comments evincing bias" and "stray

---

[2]     The "stray remarks" doctrine has been met with vociferous criticism from courts and legal scholars, not discussed in detail here because this doctrine is plainly inapt to this case, which involves numerous comments by decisionmakers about the Plaintiff specifically and in the context of their assessment of her performance. *See Diaz*, 762 F. Supp. 2d at 323 ("If a manager makes an ageist

remarks" are not one and the same. HNTB would have this Court apply the doctrine, without paying heed to the context of the statements, i.e. about whom they were made (Walsh), who made them (managers, including Walsh's own), and in what context (in the context of assessing Walsh's performance). *O'Rourke v. City of Providence*, 235 F.3d 713, 729 (1st Cir. 2001), *citing Hernandez-Loring v. Universidad Metropolitana*, 233 F.3d 49 (1st Cir. 2000) ("evidence of two specific incidents of harassment in the context of an ongoing pattern of conduct sufficient to survive summary judgment in hostile work environment.") *See Diaz*, 762 F. Supp. 2d at 327 (in summary judgment, the court must "bear in mind the broader narrative at play in a discrimination case, the context in which discrimination plays out"); *Wynn & Wynn, P.C. v. Mass. Comm'n Against Discrimination*, 431 Mass. 655, 668 (2000) (sexist statements by firm managing partner constituted direct evidence "[n]ot stray remarks. They were made by a person with the power to make employment decisions. Finally, his statements related to the decisional process itself."). Similarly, these are not one or two random ageist remarks from random employees about random co-workers; they are numerous statements from

---

remark, it could well be a window on his soul, a reflection of his animus, or arguably, just a slip of the tongue somehow unrelated to his "true" feelings. If other managers were nearby, they could well have dismissed the overheard comment as an aberration, or it could have created a new norm of conduct for the company, an atmosphere of impunity. The point is that the inference to be given the remark should not be made by judges, particularly judges who have not heard the entire story."); *see also* Michael Zimmer, *Slicing & Dicing of Individual Disparate Treatment Law*, 61 La. L. Rev. 577 (2001).

9

her managers, that viewed separately, or taken together, are evidence from which a jury may find that the ageist stereotypes that infected HNTB's treatment of Walsh in particular--particularly HNTB's assessments of her performance. *See Wilson v. Recorded Future, Inc.*, No. 1:22-cv-11105-IT, 2025 U.S. Dist. LEXIS 193072, at *34 (D. Mass. Sep. 30, 2025) (evidence of age bias included manager "describ[ing] older employees as 'lazy' and 'storytellers' while describing younger employees as 'high energy'").

Here, the jury may also infer that age bias influenced HNTB's mounting efforts to make Walsh's work life uncomfortable and even hostile, i.e. that Danny Vealey ("Vealey") and others wanted her to quit. As the District Court recognized, these comments coupled with Clark's works (including telling Walsh to "shut up") "could be interpreted as contributing to establish a hostile workplace." ADD10. That Walsh and Allison tendered their resignations *on the same day* after two-plus decades of employment need not be a coincidence; rather, the jury instead infer that HNTB's mistreatment of these two older workers—who could be replaced with "younger, cheaper" ones—compounded over months to a point where both Walsh and Allison felt so defeated that they left their employment of decades. *See e.g., O'Rourke*, 235 F.3d at 729, *citing Williams v. Gen. Motors Corp.*, 187 F.3d 553, 563-564 (6th Cir. 1999) ("The accumulated effects of incidents of humiliating

offensive comments directed at women and work-sabotaging pranks taken together, can constitute a hostile work environment.")

The District Court properly recognized that Vealey's statement that Walsh could be replaced by someone "younger, cheaper" the HNTB "not getting its return investment" on Walsh are evidence of age bias. ADD10. From these statements, a jury may infer that age bias infected its managers assessments of Walsh's (and Allinson's) performance. A jury may also infer that HNTB condoned age discrimination, or even that it encouraged age-based decision-making. After all, if a manager believes that it is OK to tell their subordinate that they can be replaced with someone "younger" "cheaper," a jury can infer that the manager did not expect that the employer would hold them to task for the plainly discriminatory remark. The jury also may infer that the manager felt emboldened to make such statements because age-based assessments were part of the culture in the workplace. To be sure, "any ageist, sexist, or racist remarks by those involved in the decisional process may be considered probative of discrimination against a particular plaintiff." *Adams v. Schneider Elec*. USA, 492 Mass. 271, 283 n.7 (2023). The probative value of such statements is for the jury to decide.

## CONCLUSION/RELIEF SOUGHT

Because genuine issues of material fact exist as to whether HNTB discriminated against Plaintiff Joanne Walsh because of her age, Walsh is entitled

to a trial on Counts I and II. As such, Walsh respectfully requests that this Court reverse and vacate the District Court's order granting summary judgment on her discrimination claims and remand this matter for trial. Pursuant to 29 U.S.C. § 216(B) and Mass. Gen. Laws ch. 151B, § 9, Walsh also requests an award of attorneys' fees and costs in prosecuting her appeal.

Respectfully Submitted,
Joanne Walsh, Appellant,
By Her Attorneys,


*/s/ Michaela C. May*
Michaela C. May (1st Cir. Bar #1152971)
Zachary H. Hammond (1st Cir. Bar #1199716)
Bennett & Belfort, P.C.
24 Thorndike Street, Suite 300
Cambridge, MA 02141
T: (617) 577-8800 x211
F: (617) 577-8811
mmay@bennettandbelfort.com
zhammond@benenttandbelfort.com


Date: October 31, 2025

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the word limit of Fed R. App. P. 32(a)(7)(B)(ii) because this brief contains 2,959 words. This brief complies with the typeface requirements of Fed. R. App P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because I have prepared this brief in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Date:  October 31, 2025            */s/ Michaela C. May*
                                   Michaela C. May

## CERTIFICATE OF SERVICE

I hereby certify that this Plaintiff-Appellant's Brief and Addendum, filed through the PACER/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Date:  October 31, 2025            */s/ Michaela C. May*
                                   Michaela C. May

No. 24-1499

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

JOANNE WALSH,
*Plaintiff-Appellant*,

*v.*

HNTB CORP.,
*Defendant-Appellee*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS
Case No. 1:22-CV-10453-NMG

ADDENDUM TO THE REPLY BRIEF
OF APPELLANT JOANNE WALSH

Michaela C. May (1st Cir. Bar #1152971)
Zachary H. Hammond (1st Cir. Bar #1199716)
Bennett & Belfort, P.C.
24 Thorndike Street, Suite 300
Cambridge, MA 02141
T: (617) 577-8800 x211
F: (617) 577-8811
mmay@bennettandbelfort.com
zhammond@benenttandbelfort.com

ADDi

## TABLE OF CONTENTS

Contents..............................................................................................ADDii


**Orders of the District Court**

Memorandum & Order (dated 12/21/2023).......................................ADD1

Judgment (dated 12/21/2023) ........................................................ADD13


**Rules**

Fed. R. App. P. 3.............................................................................ADD14

**United States District Court**

**District of Massachusetts**

|  |  |  |
|---|---|---|
| Joanne Walsh, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. |
| | ) | 22-10453-NMG |
| HNTB Corporation, | ) | |
| Defendant. | ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from allegations that defendant, HNTB Corporation ("HNTB" or "defendant") constructively terminated plaintiff, Joanne Walsh ("Walsh" or "plaintiff"), because of her age in violation of both the Age Discrimination in Employment Act, 29 U.S.C. § 621-34 ("ADEA") and M.G.L. c. 151B, § 4. Walsh also claims a breach of the covenant of good faith and fair dealing.

Pending before the Court is defendant's motion for summary judgment (Docket No. 34). For the reasons that follow, the motion will be allowed.

ADD1

## I.    **Background**

Walsh was employed at HNTB from January, 1994 until she
resigned in September, 2020 at the age of 55.  She maintains,
and her employer vigorously denies, that her resignation
resulted from a constructive discharge.  Her employment as a
Technology Support Representative II involved a range of IT
support functions for HNTB customers.  Walsh was purportedly
content with her position and did not seek promotion to the next
level of Technology Support Representative III.

The events leading to Walsh's resignation began when Walsh
received her 2018 performance review which stated that she "met
expectations" but "at the lowest in the range."  Her 2019
performance review reported that she "inconsistently met
expectations."  In August, 2019, Walsh was placed on a
Performance Improvement Plan ("PIP") purportedly to improve
issues concerning "responsiveness, pushback, upkeep of the
technical room, and lease returns."  Walsh maintains that she
was placed on a PIP to force her to resign because of her age.

The PIP term was 90 days and ended in November, 2019. While
the parties dispute the precise dates, at about that time Danny
Vealey ("Vealey") became Walsh's supervisor, replacing her
former supervisor, James Clark ("Clark").  Vealey worked with
Walsh throughout the PIP period and was satisfied that she met
the goals of that program.

- 2 -

ADD2

After completion of the PIP, Walsh remained in her same position with the same pay but the parties dispute whether she retained the same job responsibilities. Plaintiff asserts that Clark reported that she "barely improved enough to get off the PIP."

In September, 2020, Walsh resigned from HNTB. Defendant maintains that Walsh was not about to be terminated but she insists she was being pushed out. Her colleague with the same job title, Lindsay Allinson, also resigned on the same day. Allinson was then 62 years old.

Walsh's departure created an immediate vacancy. According to plaintiff, an individual in his 30s was scheduled to replace her but ultimately, her job was filled by Amr Kaliouby who, at the time, was 53 years old.

Walsh contends that during the period leading up to her resignation, management made her life difficult and she felt she had no choice but to resign. One year and five months later, plaintiff filed the instant suit alleging that she was constructively terminated on the basis of her age in violation of federal and state law.

## II.  **Motion for Summary Judgment**

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is

- 4 -

ADD4

appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

### B. Analysis

#### 1. Federal and State Claims of Age Discrimination

Discrimination based on age is impermissible under both ADEA and M.G.L. c. 151B, § 4. The standards applied for age discrimination claims under federal law and Massachusetts state law are so similar that both claims can be analyzed together. Tombeno v. FedEx Corp. Servs., Inc., 284 F.Supp.3d 80, 86 (D. Mass. 2018) (citing Adamson v. Walgreens Co., 750 F.3d 73, 78 (1st Cir. 2014)).

Where, as here, an employee lacks direct evidence that an employer's actions were motivated by animus, courts apply the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Haddad v. Wal-Mart Stores, Inc., 914 N.E.2d 59, 66 (Mass. 2009) (citing McDonnell Douglas Corp., 411 U.S. at 802).

Under that framework, 1) plaintiff must establish a prima facie case of discrimination, 2) defendant may rebut that case by offering a legitimate, nondiscriminatory reason for its employment action, which would then require plaintiff 3) to produce evidence demonstrating that defendant's stated reason

- 5 -

ADD5

was a pretext. Haddad, 914 N.E.2d at 66 n.14; Ingram v. Brink's, Inc., 414 F.3d 222, 230 (1st Cir. 2005).

To establish a prima facie case of discrimination, plaintiff must demonstrate that

> (1) [she is] a member of a protected class; (2) [she is] qualified for [her] job; (3) [she] suffer[ed] an adverse employment action at the hands of [her] employer; and (4) [there is] some evidence of a causal connection between [her] membership in a protected class and the adverse employment action.

Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 313 (1st Cir. 2016) (quoting Bhatti v. Trs. of Bos. Univ., 659 F.3d 64, 70 (1st Cir. 2011)).

Once a prima facie case has been stated, the burden shifts to defendant to rebut the presumption of discrimination by offering a legitimate, nondiscriminatory reason for its employment action. See Blare v. Husky Injection Molding Sys. Boston, 646 N.E.2d 111, 115 (1995). If defendant does so, plaintiff must then adduce evidence demonstrating that defendant's stated reason was pretextual. Id. at 116-17.

Defendant asserts that plaintiff cannot state a prima facie case because 1) she was performing below expectations 2) she did not suffer an adverse employment action but, rather, resigned and 3) her position was ultimately filled by someone similar in age.  Because the Court agrees that plaintiff did not suffer an adverse employment action, it finds that plaintiff has not

- 6 -

ADD6

stated a prima facie case and will, for the following reasons, allow summary judgment for defendant.

The parties do not dispute that on September 11, 2020, Walsh resigned from her position at HNTB.  Plaintiff contends, however, that her resignation resulted from a constructive discharge because 1) she was relieved of certain duties 2) the workplace environment was intolerable and 3) she would have been terminated anyway.

To establish a claim of constructive discharge, plaintiff must demonstrate that

> conditions were so intolerable that they rendered a seemingly voluntary resignation a termination.

Torrech-Hernandez v. Gen. Elec. Co., 519 F.3d 41, 50 (1st Cir. 2008).  In its inquiry, this Court must assess whether the working conditions were

> so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign.

Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 54 (1st Cir. 2000). It is insufficient to show merely that a plaintiff "suffered the ordinary slings and arrows that workers routinely encounter in a hard, cold world." Torrech-Hernandez, 519 F.3d at 50.

The First Circuit Court of Appeals ("the First Circuit") has also endorsed the doctrine that constructive discharge can be proved by demonstrating that an employer has acted in a

- 7 -

ADD7

manner that signals to a reasonable employee that she will be terminated. <u>Rivera-Rivera</u> v. <u>Medina & Medina, Inc.</u>, 898 F.3d 77, 96-97 (1st Cir. 2018). Thus, if an employee is "told <u>repeatedly</u> that she is not wanted and has no future" with the organization, the Court can infer a constructive discharge. <u>Id.</u> (emphasis in original).

### a. Demotion

Defendant maintains that plaintiff was never demoted nor were her pay or responsibilities reduced.

Plaintiff agrees that her pay was not reduced and she was not formally demoted but asserts that her team leader and later manager, Vealey, relieved her of several job duties that she had performed throughout her career.

Walsh cites her deposition in which she attested that Vealey "started taking over things that we were working on...[h]e made it look like he was in charge" but neglects to finish the quote which also states, "if a project started to go sideways, all of a sudden it was back in our lap." That testimony undermines the assertion that plaintiff's responsibilities were reduced.

Plaintiff also asserts that she was required to refer some customer issues to Vealey, but such a minor shift in oversight does not amount to constructive discharge. As the First Circuit has explained,

- 8 -

ADD8

[a] reduction in responsibility...unaccompanied by
diminution of salary or some other marked lessening of
the quality of working conditions

is not a constructive discharge. <u>Suarez</u>, 229 F.3d at 55.

### b. Hostile Work Environment

Walsh also contends that she was constructively discharged
as a result of an abusive workplace environment. As evidence,
she cites: 1) comments by Vealey that she could "be replaced by
younger, cheaper people" and that the company was "not getting
its return investment" on her, 2) Clark refused to provide her
with information on why her performance was purportedly
lackluster and later told her to "shut up" and "stop asking" and
3) Clark told her that "she barely improved enough to get off
the PIP."

HNTB responds that Walsh's evidence amounts to stray
comments and, in any event, occurred 10 months or more prior to
her resignation.

To establish a claim of constructive discharge plaintiff
needs to adduce evidence of conditions "so onerous, abusive, or
unpleasant" that a reasonable person would have felt compelled
to resign. The Court notes that there is conflicting evidence
as to when Vealey and Clark actually supervised plaintiff but,
even attributing the offending remarks to her supervisor at the
time, she has not supported a claim for constructive discharge

- 9 -

ADD9

on the theory of a hostile workplace based on the current
record.

Vealey's purported comment that Walsh could "be replaced by
younger, cheaper people" and that the company was "not getting
its return investment" on her may indeed evince age-related
animus. Clark's comments, which included telling plaintiff to
"shut up", were certainly rude, intended to reflect frustration
with Walsh and could be interpreted as contributing to establish
a hostile workplace.

The fact that these comments were made 10 months or more
prior to plaintiff's decision to resign, however, severely
undermines plaintiff's assertion that the workplace environment
was so hostile that she has "no real choice but to resign."
Suarez, 229 F.3d at 56. The temporal distance between those
comments and the date of plaintiff's resignation suggests that
plaintiff had the choice to resign and chose to stay. See
Landrau-Romero v. Banco Popular de Puerto Rico, 212 F.3d 607,
613 (1st Cir. 2000) ("If a plaintiff does not resign within a
reasonable time period after the alleged harassment, he was not
constructively discharged.").

### c. Termination

Finally, the First Circuit has recognized that constructive
discharge claims can be established by demonstrating that
plaintiff would have been discharged had she not resigned.

- 10 -

Here, there is no genuine question of material fact that Walsh's employment was not in imminent jeopardy.

The parties agree that Walsh was never expressly told or asked to leave HNTB. Furthermore, the evidence establishes that plaintiff's remedial PIP period ended more than 10 months before she resigned. The lapse of time between the bulk of the disparaging comments made to her and the date of her resignation seriously impairs her claim. That plaintiff successfully completed the remedial process with her job intact also suggests that her job security was not immediately threatened. She definitely was not "told <u>repeatedly</u> that she is not wanted and has no future." <u>See Rivera-Rivera</u>, 898 F.3d at 97 (emphasis in original).

The Court concludes that there is no credible evidence that plaintiff was constructively terminated. Because she has not demonstrated that she suffered an adverse action at the hands of HNTB, Walsh cannot state a prima facie case for age-discrimination.[1] Summary judgment on the claims pursuant to ADEA and M.G.L. c. 151B, § 4 will be granted to defendant.

---

[1] This Court is unpersuaded by plaintiff's argument that her placement on a PIP was an adverse employment action. Walsh successfully completed the PIP period and thereafter she was neither demoted nor her pay reduced and any changes in her responsibilities were de minimis.

- 11 -

ADD11

### 2. Breach of Implied Covenant of Good Faith

Finally, defendant moves for summary judgment on plaintiff's claim for breach of the implied covenant of good faith and fair dealing. This Court's conclusion that plaintiff was not constructively terminated vitiates any such claim. See McCone v. New England Telephone and Telegraph Co., 471 N.E.2d 47, 49 n.7 (Mass. 1984).

Furthermore, the exclusivity provision in Chapter 151B casts significant doubt as to plaintiff's ability to bring a common law claim for a purportedly discriminatory termination. See M.G.L. c. 151B, § 9 ("[A]s to acts declared unlawful by section 4, the administrative procedure provided in this chapter, shall, while pending, be exclusive"); see also Laureano v. Legal Sea Foods, LLC, 2013 WL 5587949, at *3 (D. Mass. Oct. 9, 2013). Accordingly, summary judgment will be entered for defendant.

### ORDER

For the foregoing reasons, the motion of defendant, HNTB Corporation, for summary judgment (Docket No. 34) is, as to all counts, **ALLOWED.**

**So ordered.**

 /s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated:  December 21, 2023

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**JOANNE WALSH**

                Plaintiff(s)

     v.                                   CIVIL ACTION NO. **22-10453-NMG**

**HNTB CORPORATION**

                Defendant(s)

**JUDGMENT IN A CIVIL CASE**

GORTON, D.J.

☐    **Jury Verdict.** This action came before the court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

X    **Decision by the Court**. In accordance with the Memorandum and Order dated December 21, 2023, D. 44, granting defendant's Motion for Summary Judgment;

        **IT IS ORDERED AND ADJUDGED**

    Judgment for the defendant HNTB Corporation.

                              Robert M. Farrell, Clerk

Dated:  December 21, 2023                       /s/ Haley Currie
                                         ( By ) Deputy Clerk

# USCS Fed Rules App Proc R 3

Current through changes received through July 21, 2025.

*USCS Federal Rules*

*Annotated* >
*Federal Rules of Appellate Procedure* >
*II. Appeal from a Judgment or Order of a District Court*

# Rule 3. Appeal as of Right — How Taken

**(a) Filing the Notice of Appeal.**

**(1)** An appeal permitted by law as of right from a district court to a court of appeals may be taken only by filing a notice of appeal with the district clerk within the time allowed by Rule 4. At the time of filing, the appellant must furnish the clerk with enough copies of the notice to enable the clerk to comply with Rule 3(d).

**(2)** An appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the court of appeals to act as it considers appropriate, including dismissing the appeal.

**(3)** An appeal from a judgment by a magistrate judge in a civil case is taken in the same way as an appeal from any other district court judgment.

**(4)** An appeal by permission under 28 U.S.C. § 1292(b) or an appeal in a bankruptcy case may be taken only in the manner prescribed by Rules 5 and 6, respectively.

**(b) Joint or Consolidated Appeals.**

**(1)** When two or more parties are entitled to appeal from a district-court judgment or order, and their interests make joinder practicable, they may file a joint notice of appeal. They may then proceed on appeal as a single appellant.

**(2)** When the parties have filed separate timely notices of appeal, the appeals may be joined or consolidated by the court of appeals.

**(c) Contents of the Notice of Appeal.**

**(1)** The notice of appeal must:

**(A)** specify the party or parties taking the appeal  by naming each one in the caption or body  of the notice, but an attorney representing  more than one party may describe those  parties with such terms as "all plaintiffs,"  "the defendants," "the plaintiffs A, B, et  al.," or "all defendants except X";

**(B)** designate the judgment—or the appealable order—from which the appeal is taken; and

**(C)** name the court to which the appeal is taken.

**(2)** A pro se notice of appeal is considered filed on  behalf of the signer and the signer's spouse and minor children (if they are parties), unless the  notice clearly indicates otherwise.

**(3)** In a class action, whether or not the class has  been certified, the notice of appeal is sufficient if  it names one person qualified to bring the appeal  as representative of the class.

**(4)** The notice of appeal encompasses all orders that,  for purposes of appeal, merge into the designated  judgment or appealable order. It is not necessary  to designate those orders in the notice of appeal.

USCS Fed Rules App Proc R 3

**(5)** In a civil case, a notice of appeal encompasses the final judgment, whether or not that judgment is set out in a separate document under Federal Rule of Civil Procedure 58, if the notice designates:

**(A)** an order that adjudicates all remaining claims and the rights and liabilities of all remaining parties; or

**(B)** an order described in Rule 4(a)(4)(A).

**(6)** An appellant may designate only part of a judgment or appealable order by expressly stating that the notice of appeal is so limited. Without such an express statement, specific designations do not limit the scope of the notice of appeal.

**(7)** An appeal must not be dismissed for informality of form or title of the notice of appeal, for failure to name a party whose intent to appeal is otherwise clear from the notice, or for failure to properly designate the judgment if the notice of appeal was filed after entry of the judgment and designates an order that merged into that judgment.

**(8)** Forms 1A and 1B in the Appendix of Forms are suggested forms of notices of appeal.

**(d) Serving the Notice of Appeal.**

**(1)** The district clerk must serve notice of the filing of a notice of appeal by sending a copy to each party's counsel of record—excluding the appellant's—or, if a party is proceeding pro se, to the party's last known address. When a defendant in a criminal case appeals, the clerk must also serve a copy of the notice of appeal on the defendant. The clerk must promptly send a copy of the notice of appeal and of the docket entries—and any later docket entries—to the clerk of the court of appeals named in the notice. The district clerk must note, on each copy, the date when the notice of appeal was filed.

**(2)** If an inmate confined in an institution files a notice of appeal in the manner provided by Rule 4(c), the district clerk must also note the date when the clerk docketed the notice.

**(3)** The district clerk's failure to serve notice does not affect the validity of the appeal. The clerk must note on the docket the names of the parties to whom the clerk sends copies, with the date of sending. Service is sufficient despite the death of a party or the party's counsel.

**(e) Payment of Fees.** Upon filing a notice of appeal, the appellant must pay the district clerk all required fees. The district clerk receives the appellate docket fee on behalf of the court of appeals.

## History

Amended April 30, 1979, eff. Aug. 1, 1979; March 10, 1986, eff. July 1, 1986; April 25, 1989, eff. Dec. 1, 1989; April 22, 1993, eff. Dec. 1, 1993; April 29, 1994, eff. Dec. 1, 1994; April 24, 1998, eff. Dec. 1, 1998; April 25, 2019, eff. Dec. 1, 2019; April 14, 2021, eff. Dec. 1, 2021.

USCS Federal Rules Annotated
Copyright © 2025 All rights reserved.

**End of Document**

ADD15